Daniel, J.
 

 The plaintiff, in his bill, states that the defendant, Nancy, was the widow of his testator, John Croker.— That she, before and after the death of the said testator, got into her possession large sums of money and evidences of -.debt, belonging to the estate of his testator, to the amount of
 
 *556
 
 $1,000, or upwards : that the said Nancy has since intermarried with the other defendant, James Yasser, and that the said Yasser has got into his hands much, if not all, of • ^ « said moneys, and now refuses to surrender the same, or in any manner to account with him for the same. The defendant, Nancy Yasser, in her answer states, that she has surrendered to the plaintiff, as the executor of John Croker, every thing of which she has had the possession or control, which in law or equity, as she is advised, he had any right or claim to. This defendant further states, that the testator gave her two notes against two merchants, one against one Southall for
 
 $
 
 IS or thereabouts, and the other against one Clark, for the purpose of discharging the separate account these men had against her in their stores: and that these were all the evidences of debt that this defendant ever had of the testator’s : that she, being so advised, returned these notes to the plaintiff. This defendant sayeth, that before she married Croker, who was .a man of a large estate, she was a poor widow with two children, by the name of Whitehead. That he, Croker, gave her, to her own sole and separate use and benefit, (to enable her to maintain the said two children,) what money she could make by the use of her needle, (she being a good tailoress.) the sale of fowls, eggs, butter, and vegetables from their garden: that Croker always recognised this money as belonging to her, and they two kept separate store accounts: that in the course of many years, (living between the Petersburg and Portsmouth Rail Roads, and near to each,) she was enabled .to save the sum of about $350 : that she was in the habit of loaning this money, and taking the bonds in her own name, with the approbation oí her husband. She farther states, that the present plaintiff has paid to her the purchase money (about 300,) af a small tract of land, which belonged to her first husband, and afterwards became the properly of Croker, and which Croker had sold to the plaintiff, taking the bonds therefor payable to her two Whitehead children. Both these sums, widi what she has saved since the death of Croker, amounting in all to about the sum of $730, which the other
 
 *557
 
 defendant, James Yasser, admits came to his hands since the marriage; and he says that he has executed a bond to pay $500 to each of the two Whitehead children when they come of age, and to furnish each with a horse, saddle and bridle. They deny receiving of Croker’s estate any money or evidences of debt, except' as above stated. There was a replication to the answers. \Ve are glad to see that the testimony in this cause has been well taken. And we must say that-it substantially supports the statements made in the answers. There are species of allowance to the wife by the husband, which may be classed under the head of pin money. It is, where he permits his wife to have and make of certain articles of his propeity, either for her own use, or in consideration of her supplying the family with particular kinds of necessaries, or when he makes to her a yearly allowance for keeping his house. The profits in the first case, and the savings in the other, will, in equity, be considered as the wife’s own separate estate, although, at law, they belong to the husband, upon the principle that all the personal property which a married woman acquires is that of her husband. A leading case on this subject is,
 
 Shaning
 
 v
 
 Style,
 
 3 P. Will. 337.
 
 Vide
 
 also Sir
 
 Paul Neal’s case,
 
 Pre. Ch. 44.
 
 Mangey
 
 v
 
 Hungerforce,
 
 2 Eq. Ea. Ab. 155. 2 Roper on H. and W. 138. After marriage, the husband may permit his wife to carry on a separate
 
 trade,
 
 and all that she earns in the t.rade, will, in equity, be her separate property, and be applicable and disposable by her, as such, subject to the demands affecting it. 2 Roper on H. and W. 171.
 

 Jt is true, that the Courts of Equity in modern times have laid down the principle, that a wife cannot acquire separate property from her husband in her savings, out of a voluntary allowance from her husband, except by
 
 a
 
 clear irrevocable gift, either to some person as a trustee, or by some,clear and distinct act of his, by which he divests himself of the property. 5 Ves. 79. See
 
 Walter v Hodge,
 
 2 Swans. 97, 2 Roper on H. & W. 140, note c. (Jacob’s ed.) In this case ¿he proof is, that Croker acknowledged at sundry times., that the sayings were .the separate property .of his wife, They
 
 *558
 
 had separate accounts at the stores of their neighboring merchants — when a borrower of money applied to him for a loan, he said he had none to lend, but his wife had — the loan wag ma(je by [ier to the borrower in the presence of her husband, and the bond was taken lor the same in her-name and with his consent. The husband himself also borrowed money of his wife, to loan to his overseer, which money was by the plaintiff’s consent, returned to her since the death of the husband. The proofs in the case, in our opinion, come up to these requirements.
 

 We are of the opinion that the bill is not supported by proofs, and it must be dismissed with costs.
 

 Per Curiam. Bill dismissed with costs.