Pearson, J.
 

 The plaintiff, -who is a creditor of the defendant McDonald, seeks to subject the land mentioned in the pleadings, to the payment of his debts, on the ground that, although the title is in the defendant, Eliza, the wife of the other defendant, yet the land was paid for with his money, and she holds the title in trust for him ; which trust Equity will subject to the claims of creditors.
 

 The defense is, that the land was paid for with the earnings
 
 *6
 
 of the wife ; that the husband being an intemperate, thriftless man, long before the plaintiff’s debt was contracted, gave his wife the privilege of working for herself, and acting as a
 
 free
 
 trader, without being subject to his control, or to his marital rights; that she was a good seamstress, and by hard work, and economy, managed to support herself, and lay up enough of her earnings to pay for the land, and accordingly bought and paid for it, and had the deed executed to herself; which was also before the debt of the plaintiff was contracted. The case presents this question : does the doctrine of “pin-money,” by which, in the English Equity jurisprudence, a husband is allowed to give his wife the privilege of working for herself, acting as a free trader, and of acquiring profits by her earnings, and savings, which neither he nor his creditors can reach, obtain in this State?
 

 After much consideration, we are satisfied that it does not; because it is inconsistent with our legislation in regard to the rights and duties of husband and wife, it is at variance with the habits and usages of our people, and tends to produce an artificial and complicated state of things; so that, while at law, the wife’s existence is considered as merged in that of her husband, her earnings are his, she cannot contract, or sue and be sued, in Equity she is entitled to her earnings — may act as a free trader, acquire property — -contract, sue, and be sued, in respect thereto.
 

 Adams, in his treatise on Equity, page 42, says the rule that tire equitable ownership is subject to the same restraints of policy, as if the legal estate were transferred, has two
 
 singular exceptions:
 
 The one in what is called “separate use and pin-money trusts.” The other is what is called “ the wife’s equity for a settlement.” lie classes them together, and speaks of both as in equal violation of principle, and a departure from the maxim,
 
 eguitas-seguitur legem,.
 

 In
 
 Allen
 
 v. Allen, 6 Ire. Eq. 293, it is settled that “ the wife’s equity for a settlement,” is a doctrine that does not obtain in this State. Ruffin, C. J., in delivering the opinion of the Court, says, in England, “ there arose the clearest case ima
 
 *7
 
 ginable for the interposition of either the Legislature or the Chancellor, in aid of the wife’s claim for protection against destitution. It happened that the Parliament left the matter to the courts.” On which necessity, the chancellors based the doctrine. He then shows, that in this State, the Legislature has not left the matter to the courts; and then draws the conclusion, by a course of reasoning, which cannot be answered, that, in this State the wife has not an equity for a settlement. The same reasoning applies with equal force to the kindred doctrine of “pin-money,” and will show that it also is super-ceded by our legislation. In addition to the legislation relied on to show that the former is superceded, in regard to the latter, the act of 1828, Eev. Code, ch. 39, sec’s 1, 13, expressly provides for the cases, on account of which, the Engy lish Chancellors, in the absence of legislation, felt called on to devise and introduce the doctrine of
 
 pin-money
 
 / “When a man shall become an habitual drunkard, or spend-thrift, wasting his substance to the impoverishment of his family, liis wife may claim alimony.” “The court may decree that she may sue and be sued in her own name, and that all property she may procure by her own industry, or may accrue to her by descent, &c., shall be secured to her, and shall not be liable to the control or the debts of her husband, and on her death without a disposition by will, &c., it shall be transmissible in the same manner as if she were a feme sole.”
 

 Our courts, therefore, have no pretext for adopting the doctrine of pin-money, even if it commended itself by a fitness to the state of things existing among us; but it is surely the part of wisdom, and conducive to the general good, to require wives, whose condition imposes upon them the necessity to becom
 
 & free-traders,
 
 to give notoriety to the fact, by having it made a matter of record, in such manner that all may know it, and that their rights may be protected, as well in the courts of Law, as in Equity, instead of leaving it to be arranged by secret agreement between husband and wife, thereby opening the door to fraud and perjury, by enabling the husband to sail under false colors — acquire credit, and avoid the payment of
 
 *8
 
 his debts, on the ground that he had allowed his wife to have her own earnings and acquire separate property.
 

 Kee
 
 v. Vasser, 2 Ire. Eq., 553, was cited for the defendants. That case is distinguishable from this; for it was a contest between the wife, and the
 
 executor of the husband.
 
 It is, however, sufficient to remark in regard to it, that the point was not made, and the attention of the Court was not directed to its consideration. The Court simply cite the English cases on the subject, and do not enter into the question how far the doctrine is applicable here.
 

 We thus reject another of those
 
 refined doctrines
 
 of equity jurisprudence, which render the English system so extremely ly artificial and complicated; and add “Pin-money” to the list of “ Part performance,” “The lien of a vendor for the purchase money.” “ The duty of the purchaser to see to the application of the purchase money,” and “The wife’s equity for a settlement.”
 

 The plaintiff is entitled to the relief asked for against the defendants.
 

 As the title was in the wife, and the creditors had only a right in Equity to convert her into a trustee, it follows that the husband had no interest which was liable to execution at law, consequently the defendant McLeran acquired nothing by his purchase, and if he had disclaimed, the bill would have been dismissed as to him
 
 with costs,
 
 but as he jnsists on a declaration as to his rights, the bill will be dismissed as to him
 
 without costs.
 

 Per Curiam. Decree accordingly.