JOHNSTONE JONES v. A. T. MIAL and others.

*Contract—Pleading.*

Where the plaintiff sues upon a special contract involving the performance of reciprocal acts between himself and the defendant, he must aver and show a readiness and willingness to perform on his part. Where the contract has been abandoned on both sides the

innocent losing party will be driven to a *quantum meruit* or some other form of action founded upon a disaffirmance of the special agreement.

(SMITH, C. J. *Dissenting.*)

CIVIL ACTION, tried at Spring Term, 1878, of WAKE Superior Court, before *Seymour, J.*

The plaintiff brought this action for an alleged breach of a contract which is substantially as follows: This agreement made on the 30th of May, 1876, between the plaintiff and defendants, witnesseth, that the plaintiff covenants to establish a weekly agricultural journal, * * * and the defendants covenant to furnish the plaintiff with a paid up list of annual subscribers, not less than fifteen hundred, at two dollars each per annum, one thousand of them to be furnished by the 1st of October, 1876, and the balance by the following January * * * and the plaintiff covenants to execute a bond for the publication of the same, and to pay to the treasurer of the State grange one half of all the cash received by him on account of subscriptions furnished by defendants, or from other sources, over and above the guaranteed subscription of fifteen hundred * * * said payments to be made quarterly and continue until $3,000 and interest shall have been paid.

The case states the evidence of the plaintiff,—that in pursuance of the contract the plaintiff commenced the publication of the journal on the 2nd of August and continued until the 25th of October, 1876, satisfactorily to defendants, a thousand copies being issued each week. The plaintiff executed the required bond which was accepted by defendants. One hundred and fifty-six subscribers were secured, and the plaintiff received $348 in payment for their subscriptions. During the said month of October several interviews were had between the parties, and the plaintiff informed the defendants that he had exhausted

all his means in the publication of the paper, and that unless they complied with their contract the paper must stop, and he proposed that if they would advance him $600 on the contract, he would continue its publication until the general meeting of the State grange in February, 1877, which the defendants declined, and thereupon the plaintiff discontinued the publication, and soon afterwards sold the name, good will, subscription list, &c., belonging to the paper, for $200. The plaintiff expended $650 in its publication, returned $7.50 to subscribers, informing others that he and defendants were liable for their subscriptions, and owed $120 to an assistant editor.

The witness further stated that he had had experience in the newspaper business, and that a paid up subscription list had a definite market value. After argument of counsel, the Court stated that the plaintiff could not recover on the contract, and that the measure of damages was the value of his services in attempting its performance, and the amount expended by him over the amount received. In submission to this intimation, the plaintiff asked to be allowed to introduce further evidence as to the amount of damages, which the Court refused; but offered to allow an amendment of the pleadings so as to declare on the general assumpsit. The plaintiff declined to amend, took a nonsuit and appealed.

*Messrs. W. W. Jones, G. H. Snow* and *Merrimon, Fuller & Ashe,* for plaintiff.
*Messrs. E. G. Haywood* and *J. B. Batchelor,* for defendants

READE, J. The parties entered into a written contract to establish a public journal, the success of which was uncertain, depending upon popular favor. It is fair to suppose that each party intended and endeavored to perform what was promised, and that the failure was accidental. It is

JONES v. MIAL.

conceded by the defendants that they made the first breach in not furnishing the number of paid up subscribers by the 1st of October, as promised, and they do not controvert the position that if the plaintiff had abided by the contract he could have sued upon it and recovered of the defendants for their breach, but they deny the plaintiff's right to sue upon the contract, because he elected to rescind it and put it beyond his power to perform it by selling out the enterprise. And so the defendants say, that just as both made the contract, so both broke it, and therefore neither can sue upon it. So His Honor held. And we are of the same opinion.

The position which the plaintiff endeavored to support is that the covenants are independent, and that he can maintain an action against the defendants for their breach without alleging performance or readiness to perform on his part. But that is not so. The contract has but one subject matter, the establishment of the "journal" to which both parties were to contribute, and neither can sue the other *upon the contract* without alleging performance on his part. What the rights of the parties may be in an action on the common counts is not before us. There is no error.

SMITH, C. J. *Dissenting.* I do not concur in the opinion that the plaintiff is not entitled to recover. It is true that under the former system of pleading and practice, technical distinctions are made between declarations on special contracts and on the common counts, under which the nonsuit in this case would be required. But, as I understand, these technicalities are not recognized in the more rational and simple system of our present Code. The Constitution adopted in 1868 abolishes the distinction between actions at law and suits in equity, and the forms of all such actions and suits, and substitutes therefor a single form of action. Art. IV, § 1.

The complaint which supercedes the declaration is required to contain only a plain and concise statement *of the facts* constituting a cause of action, without unnecessary repetition, each material allegation being numbered. C. C. P. § 93 (2). The judgment where there is an answer may be for any relief consistent with the case made by the complaint and embraced within the issue. § 249.

It is the apparent purpose of the new system, while simplifying the method of procedure, to afford any relief to which a plaintiff may be entitled upon the facts set out in his complaint, although misconceived and not specially demanded in his prayer. In the present case the essential facts are contained in the pleadings, and whether the remedy is on the special contract or on what are called the common counts, it ought not to be denied. It is obvious that the funds which were to be furnished by the defendants through the subscription list were relied on by the plaintiff, and necessary to enable him to carry out the projected enterprise. Through their failure to perform their undertaking, the publication of the paper became impracticable, and its suspension and a sale of the materials were a necessity forced upon the plaintiff. Regarding this as a rescision of the contract, it resulted from the wrongful act of the defendants, involving loss to the plaintiff, and excused him from further fruitless efforts to continue the publication, and gave him a right to compensation against the defendants for damages caused by their violation of their engagements. The cases cited and commented on in the argument of the defendants' counsel, all proceed upon the distinctions in the form of the remedy between actions on special contracts and those implied by law, and do not apply to the present mode of legal procedure.

No error.

PER CURIAM.                              Judgment affirmed.