LUCY O. McCURRY v. L. PURGASON and ALFRED FREEMAN, Executors.

(Filed 15 December, 1915.)

**1. Husband and Wife—Wife's Services—Implied Consent.**

Before the passage of the Martin act the husband, by his conduct, could give his implied consent that the wife should receive compensation for her services rendered to another, as where he joins in his wife's action to recover them, etc.

**2. Evidence—Husband and Wife—Deceased—Transactions.**

A husband is not disqualified by interest from testifying in his wife's behalf in her action to recover for services rendered a deceased person, the possibilities of his being benefited by her will or in case of her intestacy being too remote.

**3. Appeal and Error—Brief—Exceptions Abandoned.**

Exceptions not mentioned in appellant's brief are deemed abandoned.

**4. Evidence—Deceased Persons—Declarations.**

In an action to recover for services rendered a deceased person before his death, testimony as to his declarations made to a witness while the deceased was trading at his store are held, under the circumstances of this case, to be objectionable as hearsay evidence.

**5. Instructions—Construed as a Whole—Appeal and Error.**

In an action to recover the value of personal services rendered a deceased person the judge charged the jury that the burden of proof was on the plaintiff to offer evidence "sufficient by its greater weight to satisfy them" of the truth of her allegations. Construing this excerpt with the charge in this case as a whole, no reversible error is found.

**6. Limitations of Actions—Contracts—Consideration for Services—Board—Wills—Devises—Implied Promise.**

In an action to recover for board and lodging furnished the deceased by the plaintiff, there was evidence tending to show that the deceased had rented to the husband of the plaintiff his home place, and visited and stayed with them at certain intervals and for certain periods of time, for which he promised to compensate the plaintiff by leaving her, at his death, the said home place; that the deceased had at one time executed a will to carry out this promise; that more than three years next before the commencement of this action the plaintiff and her husband, upon default of the deceased, moved away from this place, and that the testator died, leaving no provision in his will to carry out his promise: *Held*, a question arose under the evidence as to whether the plaintiff and the deceased mutually abandoned the contract when the plaintiff and her husband moved from the land; and, if so, as a matter of law, her cause of action was barred by the statute; but if otherwise, she had the right to elect to wait until the death of the deceased and recover for the amount of her damages, as upon an implied promise to pay for the value of the services rendered.

**7. Same—Measure of Damages.**

Where the plaintiff is entitled to recover for board and lodging she had supplied a deceased person under his promise to leave her at his death a certain lot of land, which the deceased had failed to perform, and before his death had rendered performance by the plaintiff of her part of the agreement impossible, the measure of damages is the value of the land to be devised, less the cost and expense she would have incurred in performing her part of the contract, when she has elected to wait until the death of the deceased and sue for the full damages arising from his breach of the contract.

APPEAL by defendants from *Harding, J.,* at August Term, 1915, of RUTHERFORD.

Civil action. Plaintiff sued for the value of services rendered by her to the testator of defendants during the year 1905, and from that time to 12 December, 1910—in furnishing him board to November, 1908, and board and lodging the rest of the time. The evidence tended to show that the testator, in 1904, had rented to plaintiff's husband, Walter D. McCurry, a tract of land known as his home place, and that after he had taken possession of it, the testator occasionally visited plaintiff and her husband at their home on the land until the early part of the year 1905, when he suggested of his own accord that he did not think it right that he should stay so much with them and not pay for his board and lodging, as plaintiff was "put to a great deal of trouble and expense on his account," and it was not fair to plaintiff that he should stay there any longer without giving her some compensation for her services, and he then offered to give her, in his will, "one-half of the land on the south side of the big road," which he stated she would get at his death. The testator lived with his son, Dugger Freeman, until the latter's death in November, 1908, though visiting plaintiffs during the interim, and, in 1908, he moved to plaintiff's home and lived there until 12 December, 1910, when plaintiffs moved from the land and lived else-

where. The testator died in January, 1915. The jury returned the following verdict:

1. Did the testator, J. G. Freeman, enter into a contract with the plaintiff that if she would live with him and take care of him that he would in his will at his death compensate her for her services rendered him, as alleged? · Answer: Yes.

2. Did the plaintiff render service to the defendants' testator as alleged? Answer: Yes.

3. In what amount, if any, are defendants indebted to plaintiff? Answer: $500.

4. Is the plaintiff's claim barred by the statute of limitations, as alleged? Answer: No.

Defendants appealed from the judgment upon the verdict, after reserving their exceptions.

*No counsel for plaintiff.*
*Solomon Gallert for defendants.*

WALKER, J., after stating the case: The first four exceptions in this appeal were taken to the competency of the male plaintiff, Walter D. McCurry, husband of his coplaintiff, to testify as to transactions and communications with the testator in regard to the services to recover the value of which this suit was brought. The ground of the objection to this testimony is that the wife's earnings belonged to her husband, and for this proposition is cited *Syme v. Riddle,* 88 N. C., 463. We said, in *S. v. Robinson,* 143 N. C., 620: "It is settled that the husband is entitled to the society and to the services of his wife, and, consequently, to the fruits of her industry. She cannot contract to render those services to another without his consent. Those rights were given to the husband, it is said, because of the obligation imposed by the law upon him to provide for her support and that of their offspring, and the right continues to exist. *Syme v. Riddle,* 88 N. C., 463; *Baker v. Jordan,* 73· N. C., 145; *Hairston v. Glenn,* 120 N. C., 341; *Kee v. Vasser,* 37 N. C., 553; *McKinnon v. McDonald,* 57 N. C., 1; *Cunningham v. Cunningham,* 121 N. C., 413. There was no evidence that the husband assented to the contract." *Justice Hoke* refers to the same subject in *Price v. Electric Co ,* 160 N. C., 450, at page 452, in these words: "Our decisions were rendered prior to the Martin act, Laws 1911, ch. 109, which practically constitutes married women free traders as to all their ordinary dealings, and we are not called on to determine the effect of this legislation on the question presented, as all the authorities here and elsewhere hold that a husband may confer upon the wife this right to earn and acquire property, in any event, when the rights of creditors do not intervene. *Syme v. Riddle, supra; Cunningham v. Cunningham.*

121 N. C., 414; *Peterson v. Mulford,* 36 N. J., 481; *Mason v. Dunbar,* 43 Mich., 407."

We need not pause to inquire, therefore, how this question would be affected if this transaction had not taken place before the passage of the statute of 1911 (known as the Martin act). It all occurred prior to that time, and is governed by the law as it then stood. But we think the admitted facts in this case show that the husband fully assented to the contract of his wife with the testator, and his conduct at that time, and especially when considered in connection with what has since been done by him, is conclusive of his assent and equivalent to an agreement on his part that his wife should have and enjoy as her own separate property the earnings under the contract with the testator, the same as if she had been acting in her own behalf as a *feme sole.* He has evidently given his full sanction to her separate recovery in this suit and has assisted and aided to that end, and has shown that he has regarded the contract from its very inception as made solely for her benefit. *Price v. Electric Co., supra.* We hold, therefore, that the wife is entitled to recover whatever is due under the contract, for her services, for her own separate and individual benefit. It follows that, having had no interest in his wife's separate earnings from this transaction, the husband was a competent witness in her behalf as to his dealings and communications with the testator. He is not disqualified as a witness because he may become a beneficiary under his wife's will, or because, if she dies intestate, he would succeed to her personal property, subject to the payment of her debts, as these are mere possibilities and too remote and speculative to be considered.

The next eight exceptions were taken to the testimony of the plaintiff, herself. We have examined them carefully with reference to what she said, and while some of the questions and answers appear to be harmless, others are close to the danger line, if they do not cross it; but we need only give the warning, in the hope that all apparent transgression of the statute will be avoided at the next trial.

The thirteenth exception is not mentioned in the brief and is, therefore, abandoned under our rule, but we may remark that there was evidence sufficient to carry the case to the jury, and the motion for a nonsuit was, therefore, properly denied.

The fourteenth exception, which was taken to the ruling of the court excluding the question put to the witness Bynum Owens, as to what the testator had said to him at the time he purchased certain goods at the store in Sunshine, is untenable. The evidence proposed to be elicited was nothing more than hearsay and was clearly inadmissible.

The fifteenth exception, addressed to a portion of the charge of the court to the jury, cannot be sustained. If we consider this excerpt from the charge alone, it is not subject to the criticism that it omitted any

reference to the evidence, or to the rule as to its weight or preponderance, while instructing the jury as to the burden on plaintiff of proving the facts necessary to a recovery by her. We think it sufficiently states the correct rule and, with reasonable distinctness, it told the jury that the burden of proof was upon the plaintiff to make out her case and to offer evidence, "sufficient by its greater weight to *satisfy* them" of the truth of her allegation. But it is certainly clear and full enough, when construed with other parts of the charge, it having been long since settled that the latter shold be considered as a whole. We are not permitted to construe away the plain meaning of a charge, when thus viewed, by any process of dissection which dismembers it and leaves only its separate parts before us. *Kornegay v. R. R.,* 154 N. C., 389; *McNeill v. R. R.,* 167 N. C., 390; *Aman v. Lumber Co.,* 160 N. C., 374. An objection much like this one was considered by us and overruled in *S. v. Jim Cooper, post,* decided at this term.

The sixteenth exception is covered by what we have said in regard to the one just preceding it. We think the judge instructed the jury substantially as to the burden of proof, in respect to the second issue. When the charge is read as a whole, it was sufficiently explicit, and we are satisfied the jury fully understood what was the law. The seventeenth exception is answered in the same way.

We come now to the eighteenth exception, as to the statute of limitations, and this depends altogether upon whether the contract was abandoned by the parties in 1910, when plaintiffs left the land and moved to another home. If the contract was mutually abandoned at that time, any cause of action in the nature of a *quantum meruit* that the *feme* plaintiff now has, to recover for services previously rendered, accrued then, and as more than three years have elapsed since that time and before the bringing of this action, she would be barred. If the contract was not mutually abandoned, and the plaintiff can recover on the special contract, then the statute will not bar, as the cause of action did not accrue until the death of the testator. As to whether the contract was abandoned is a mixed question of law and fact, as to what constitutes an abandonment being matter of law, and as to whether there has been an abandonment being a question depending upon how the jury may find the facts to be. The subject is discussed in *May v. Getty,* 140 N. C., 310. See, also, *Faw v. Whittington,* 72 N. C., 321; *Banks v. Banks,* 77 N. C., 186.

The complaint and evidence in this case indicate that plaintiff is suing upon the theory that she could not perform her part of the contract by reason of the testator's conduct, and that her withdrawal from the home place was caused thereby. She seeks to recover, not the price or measure of value fixed by the contract for her services, but on an implied assumpsit to pay for the actual services rendered what they are reasonably

worth. It was said by *Justice Brown* for the Court, in *Tussey v. Owen,* 139 N. C., 457, at pages 461, 462: "There is a class of cases where, under some circumstances, the rigor of the common-law rule has been relaxed, and a person has been permitted to recover the actual value of his services, although failing to perform the entire contract on his part. In some cases the law implies a promise to pay such remuneration as the benefit conferred is really worth. *Dumalt v. Jones,* 23 How. U. S., 220. But we know of no authority to support the claim that the plaintiff could recover the full contract price, unless she had performed the contract. *Chief Justice Smith* quotes a number of such cases in *Chamblee v. Baker,* 95 N. C., 100, but he also quotes with approval from the opinion in *Munroe v. Phillips,* 8 Ellis & Black, 739: 'The inclination of the courts is to relax the stringent rule of the common law, which allows no recovery upon a special unperformed contract nor for value of the work done, because the special includes an implied contract to pay. In such case, if the party has derived any benefit from the labor done it would be unjust to allow him to retain that without paying anything. Accordingly, restrictions are imposed upon the general rule, and it is confined to contracts entire and indivisible, and when, by the nature of the agreement or by express provision, nothing is to be paid till all is performed.' The general rule is laid down in *Cutler v. Powell,* 2 Smith L. C., 1: 'But if there has been an entire executory contract, and the plaintiff has performed a part of it, and then willfully refuses, without legal excuse and against the defendant's consent, to perform the rest, he can recover nothing, either in general or special assumpsit.' This rule has been repeatedly recognized and acted on by this Court. *Thigpen v. Leigh,* 93 N. C., 47; *Lawrence v. Hester, ibid.,* 79. Some of the cases cited may have been modified so as to permit a recovery upon a *quantum meruit* when a recovery could not be had upon the contract for the contract price. But the authorities are uniform that no recovery can be had for the contract price unless the contract has been performed, and that is the ground upon which we put our decision."

In *Ducker v. Cochrane,* 92 N. C., 597, this Court held: "That one party to a contract cannot maintain an action for its breach without averring and proving a performance of his own antecedent obligations arising on the contract or some legal excuse for a nonperformance thereof, or, if the stipulations are concurrent, his readiness and ability to perform them." Referring to this passage in *Corinthian Lodge v. Smith,* 147 N. C., 244, *Justice Hoke* said: "This principle has been recognized and applied by us in many well-considered cases. *Tussey v. Owens,* 139 N. C., 457; *Jones v. Mial,* 79 N. C., 164, modified. but not on this point, in 82 N. C., 252; *Niblett v. Herring,* 49 N. C., 262; *Grandy v. McCleese,* 47 N. C., 142. And it is also well established that when the stipulations imposed by such a contract on the complaining party are in

the nature of conditions precedent a strict compliance may be insisted on. *Mizell v. Burnett,* 49 N. C., 249; *Norrington v. Wright,* 115 U. S., 188; *Oakley v. Morton,* 11 N. Y., 25; *Pickering v. Greenwood,* 114 Mass., 479." *Chief Justice Smith* said, in *Chamblee v. Baker,* 95 N. C., at p. 101: "So stringent was the former practice that in an action upon a special contract to pay for service to be rendered, and which was rendered, no evidence in defense or to reduce the recovery was admissible to prove inattention, neglect, wasted time or other misconduct of the plaintiff, or dereliction in the undertaken duty, and the defendant was driven to a separate action for redress. *Hobbs v. Riddick,* 50 N. C., 80. It is otherwise under the present system, and the entire dispute, involving opposing demands, is now adjusted in a single suit. This is some relaxation of the doctrine regarding special contracts, and the enforcement of the obligations they create. The manifest injustice, upon such technical grounds, of refusing all compensation for work done and not completed, or for goods supplied short of the stipulated quantity, and of allowing the party to appropriate them to his own use without paying anything, has been often felt and expressed by the judges, and a mode sought by which the wrong could be remedied."

We discussed this matter so fully in *Coal Co. v. Ice Co.,* 134 N. C., 574, at pp. 579, 580, that it is not improper that we should reproduce here what was said in that case: "Where the agreements go to the whole of the consideration on both sides, the promises are dependent, and one of them is a condition precedent to the other, and full performance is required before there can be any recovery, as in *Lawing v. Rintles,* 97 N. C., 350; but this rule does not apply if, for instance, work has not been done or materials furnished in strict accordance with the contract, provided one of the parties has received and enjoyed any benefit from the contract, and certainly not unless full performance is made a condition precedent to payment. The law implies a promise by the party to pay for what has been thus received, and allows him to recover any damage he has sustained by reason of the breach, for this is exact justice. The language of the Court in *Britton v. Turner,* 6 N. H., 492 (26 Am. Dec., 713), seems to fit the case: 'If, where a contract is made of such a character that a party actually received labor or materials, and thereby derived a benefit and advantage over and above the damage which has resulted from the breach of the contract by the other party, the labor actually done and the value received furnish a new consideration, and the law thereupon raises a promise to pay to the extent of the reasonable worth of such excess. This may be considered as making a new case—one not within the original agreement—and the party is entitled to "recover on his new case" for the work done—not as agreed, but yet accepted by the defendant.' In *McClay v. Hedge,* 18 Iowa, 66, the Court, by *Dillon, J.,* referring to *Britton v. Turner,* says: 'That cele-

brated case has been criticised, doubted and denied to be sound, yet its principles have been gradually winning their way into professional and judicial favor. It is bottomed on justice and is right upon principle, however it may be upon the technical and more illiberal rules as found in the older cases.' And the same Court, in *Wolf v. Gerr*, 43 Iowa, 339, states it to be the settled doctrine 'that a party who has failed to perform in full his contract may recover compensation for the part performed; less the damages occasioned by his failure.' This principle is fully sanctioned by the authorities. *Chamblee v. Baker*, 95 N. C., 98; *Simpson v. R. R.*, 112 N. C., 703; *Gorman v. Bellamy*, 82 N. C., 496. In the last case cited this Court said: 'The inclination of the courts is to relax the stringent rules of the common law, which allows no recovery upon a special unperformed contract itself, nor for the value of the work done, because the special excludes an implied contract to pay. In such a case, if the party has derived any benefit from the labor done, it would be unjust to allow him to retain that without paying anything. The law, therefore, implies a promise to pay such remuneration as the benefit conferred is really worth.' The Court also said, in *Brown v. Morris*, 83 N. C., at p. 257: 'If there had been delivered a smaller number of bricks, and they had been received and used by the defendant without objection, we see no reason why the plaintiff would not be entitled to compensation for such as were delivered; and we are not disposed to carry the doctrine that a partial delivery under an agreement to deliver a definite quantity or number of goods leaves the purchaser the possession and use of such as are delivered without liability to the seller, beyond the decided cases, and will treat it as operating only when the failure to deliver is willful and without legal excuse.' *Monroe v. Phelps*, 8 El. & B., 739; *Reade v. Rann*, 10 B. & C., 438; *Leonard v. Dyer*, 26 Conn., 172; 68 Am. Dec., 382; *Horne v. Batchelder*, 41 N. H., 86; *Bush v. Jones*, 2 Tenn., 190; *Duncan v. Baker*, 21 Kan., 99; *Lamb v. Brolaski*, 38 Mo. App., 51; *Myer v. Wheeler*, 65 Iowa, 390; *Hansen v. C. S. H. Co.*, 73 Iowa, 77; *M. L. Co. v. Coal Co.*, 160 Ill., 85; 31 L. R. A., 529. The doctrine is well stated and supported by the citation of numerous authorities in 9 Cyc., 686 and 687, note 15."

We have quoted copiously from the principal authorities, because we regard the question as a very important one, entering, as it does, into our daily transactions, both large and small. It will be seen that the courts have gradually drawn away from the old and rigid rule of the common law and adopted a principle of decision more in harmony with our sense of justice and right. It must be borne in mind, as held in *Tussey v. Owen*, and the other cases cited above, that where the contract is special and entire the price, as fixed by it, cannot be awarded if there has not been strict performance by the party who seeks to recover it.

There is evidence in this case that the parties treated the special contract as at an end in 1910; that the plaintiff was compelled to leave the land by the testator's fault; and was thereby prevented from performing her part of the contract, and that intestate was willing that it should terminate then. If the jury shall find this to be the case, then the plaintiff can recover the reasonable worth of her services, but her cause of action would have accrued to her at the time of the abandonment and would be barred. If, on the contrary, they did not abandon the contract, or treat it as at an end, but she relied on the breach of it by him, in failing to perform his part of it and by his conduct preventing continued performance of her part of it, she had the right to wait until the intestate's death before suing upon the contract for its breach, especially as in this case it was stipulated by the intestate that he would devise her the land, which could not take place or be fulfilled until his death, as the will would take effect from that time. It appears that he had executed a will devising her the property, which he afterwards revoked, but this was no breach, as he had the full time, until his death, to perform. Suppose she had sued him in 1910, and the contract had not been abandoned, and he had answered that he had complied with his undertaking, as far as he then could, by making a will in her favor as to the land, or, if he had not, that he would do so, and claimed the benefit of the unexpired period. Could she have recovered? We are of the opinion that, under the principle stated in *Buffkin v. Baird,* 73 N. C., at 290, and *Smith v. Lumber Co.,* 142 N. C., 26, there is a phase of the case which, if the facts are found by the jury to present it, will prevent the bar of the statute. We stated in *Smith v. Lumber Co., supra,* at marg. pp. 32, 33, the four remedies for the breach of a contract for services, and among them that the party may wait until the end of the term and then sue the delinquent for the salary, or the amount of compensation fixed by the parties in their contract, less, in that case, any amount earned in the meantime by the plaintiff, or which he could have earned by reasonable effort, and, in this case, and as to this plaintiff, less the cost and expense of performing her part of the contract, so that if the plaintiff has chosen to treat the contract as merely breached by the intestate, and has further elected to wait until his death occurred and sue for the full compensation, which would be the equivalent in money of the land agreed to be devised, less the proper deduction therefrom, she had the right to do so, and in that case there would be no bar of the statute, as the cause of action did not accrue until his death.

These propositions are all based upon the assumption that the plaintiff was not in fault, but was at all times ready, able and willing to perform the contract on her part. It must not be supposed that when defendant's intestate breached the contract, if such is the case, that plaintiff could not immediately renounce it herself and sue for her

damages, for that was her right.   *Smith v. Lumber Co., supra; Hursey's case,* 91 S. C., 618 (74 S. E., 618).   The case last cited decides that where a person who has agreed for a valuable consideration to devise or bequeath property, breaches the contract, the other party may elect to regard the contract as at an end and sue at once for damages, and this is the first remedy stated in *Smith's case, supra.*   If the contract was breached in 1910, we see nothing to show, as the evidence now is, that plaintiff made any election to sue on account of it, but the contrary rather appears.   If both had abandoned the contract, as we have said, she was bound to sue then, and not wait for intestate to tender performance in his will, for that part of the contract was annulled.   On the question whether intestate's conduct was such as to prevent plaintiff remaining with him and performing her part of the contract, we refer to *Prater v. Prater,* 94 S. C., 267 (77 S. E., 936).

The verdict and judgment will be set aside, and the case submitted to another jury to find the facts upon which the defendant's liability depends, as there was substantial error in the particulars indicated.

New trial.

CLARK, C. J., concurring in result: When the Constitution of 1868, Art. X, sec. 6, in accordance with the sentiment of a more enlightened age, abolished the common-law system under which the property of a married woman became the property of her husband on marriage, it provided not only that all property which she had at the time of the marriage should "be and remain the sole and separate estate and property of such female," but, also, that she should retain all property "to which she may after marriage become *in any manner entitled.*"   Thus, in the fullest and most explicit manner, the earnings of the wife after marriage were guaranteed to her by the Constitution.

It is true that now, as always, the husband is entitled to the services and society of his wife, and, in like manner, she is entitled to the services and society of her husband; but this does not give the wife ownership of the earnings of her husband, nor, since the Constitution of 1868, has it given the ownership of her earnings to the husband.   It was doubtless in sheer inadvertence to this distinction that in *Syme v. Riddle,* 88 N. C., 463, this Court held that though the Constitution was as above quoted, the wife could not have her own earnings because no statute of the Legislature had been passed to that effect.

In *Price v. Electric Co.* the majority of the Court held, in deference to *Syme v. Riddle,* that, not only the earnings of the wife from taking in washing, but that damages for her loss of her leg and physical and mental anguish and loss of time belonged to her husband, though stating that the contrary was held in other States.   The General Assembly, at its session shortly thereafter, enacted ch. 13, Laws 1913, which provides

PENNINGER *v.* R. R.

as follows: "The earnings of a married woman by virtue of any con-
tract for her personal service, and any damages for personal injuries,
or other torts sustained by her, can be recovered by her suing alone, and
such earnings or recovery shall be her sole and separate property *as
fully as if she had remained unmarried.*"

It will be thus seen that this matter has been finally settled in accord-
ance with the express terms of the Constitution, which gave to the wife
all that she, *"in any manner,* might acquire after marriage." The right
of a wife to her earnings does not depend upon the consent of the hus-
band, as was held in *Syme v. Riddle,* but upon the Constitution and the
statute which vests her earnings in her as fully as the husband has a
right to his. As already said, this no more interferes with the liability
of each and the duty of each to the other than does the constitutional
provision that the wife owns her property free from any control by the
husband.