ANDREW SYME, Adm'r, v. WILLIAM D. RIDDLE.

*Husband, entitled to earnings of wife—Statute of Limitations, right of fraudulent donee to plead.*

1. A husband is entitled *jure mariti* to the services and earnings of the wife: the constitution of 1868 and the "marriage act" do not have the effect of changing this rule of law.

2. The statute of limitations may be pleaded by a fraudulent donee of the intestate, in a proceeding by the administrator for license to sell lands for assets to pay the debt of the intestate. (See preceding case).

(*Baker* v. *Jordan*, 73 N. C., 145, cited and approved).

SPECIAL PROCEEDING heard at Spring Term, 1883, of WAKE Superior Court, before *Philips, J.*

This is a proceeding begun before the probate judge for the purpose of making real estate assets, and after issues joined it was certified to the superior court.

It is conceded that the plaintiff's intestate left no personal property, and that she owned no real estate except that described in the complaint. She died in 1874, and the plaintiff qualified as her administrator in 1878. Shortly before her death, she conveyed the land to the defendant in fee simple, but the plaintiff insists that this was done with the intent to defraud her creditors, and therefore the conveyance was void. The defendant denies this, and also, that the intestate was indebted to any one at the time of her death, and for a further defence relies upon the statute of limitations.

When the cause was called for trial, the plaintiff requested the court not to submit an issue to the jury as to the statute of limitations, insisting that no one but the administrator could avail himself of that defence, and especially that a fraudulent donee could not do so. His Honor, however, overruled the motion, and submitted such issue, to which the plaintiff excepted.

Upon the point as to the statute, the facts are as follows: One Mrs. Sprinkle, whose intermarriage with her present husband took place in 1866, rendered personal services to the intestate in the years 1868, 1869, 1870 and 1871, at the rate of thirty dollars per year, and this constitutes the only debt due from the estate.

Thereupon the judge below ruled that the husband of Mrs. Sprinkle was entitled *jure mariti* to the proceeds of her services; that it was open to the defendant to set up the defence of the

statute of limitations, even admitting the conveyance to him to have been fraudulent; and that the debt for which the plaintiff sought to sell the land was barred by the statute, so far as the defendant was concerned. The plaintiff excepted.

The court refused to grant an order for the sale of the land, and the plaintiff appealed.

*Messrs. Hinsdale & Devereux* and *Argo & Wilder*, for plaintiff.
*Messrs. Battle & Mordecai,* for defendant.

RUFFIN, J. Unquestionably, it was the well settled principle, both of law and equity, as understood and enforced in this state prior to the adoption of the constitution of 1868, and the "marriage act" of 1871–'72, that the husband was entitled absolutely and in his own right to the services of the wife, and likewise to the fruits of her industry, whether exerted in his own affairs or in those of a stranger. He alone could receipt for, or discharge a debt arising from her services, or, if withheld, could sue for and recover it.

These rights were given to the husband, because of the obligation which the same law imposed upon him, to provide for her support and that of her offspring; and it would seem to be but just that they should continue unimpaired, so long as that obligation rests upon him.

The question as to the effect of the changes, which have been wrought in the law by the new constitution and the "marriage act" upon this right of the husband to the services and earnings of his wife, was incidentally considered in *Baker* v. *Jordan*, 73 N. C., 145, the late Chief-Justice delivering the opinion of the court. It was there said that the husband has still, notwithstanding those changes, the same right in this regard as under the common law : that the same obligation to support her rests upon him, and, in order that he may discharge it, the same right to her services is given to him.

There is certainly nothing, either in the constitution or the statute, which, in terms or by a necessary implication, secures to a married woman her separate earnings; and by nothing short of a plain expression of such an intention could this court be induced to give them that construction.   If entitled, as a matter of right, to her own earnings, then she must be entitled to the time and opportunity necessary to make them, and, that is to say, that she may, at her own election, and without the consent of her husband, forsake her domestic duties and go out to labor for another for the purpose of acquiring earnings for her separate use.   There can be no middle ground taken in the matter; for the one right, if admitted, necessarily draws to it the other, and we cannot suppose that those who framed the organic law or the statute intended to introduce any such anomalous conditions into the law regulating the relations of husband and wife in this state.   Certainly there is nothing in the words used in either instrument to warrant such a supposition, and much less to force it upon the courts. Schouler, in his work on Domestic Relations (§ 162), says, that independently of the statutes, plainly securing to married women their separate earnings, the courts are always inclined to adhere to the common law rule upon the subject, and that they will not by implication deprive .the husband of his right thereto, upon the strength of statutes which merely purport to secure to her her separate property, and for this he cites, in note 2, several authorities, to which we may add *Morgan* v. *Bolles*, 36 Conn., 175.

Doubtless a husband may consent that the fruit of his wife's toils shall be her own, and constitute her separate estate; but in such case her title will rest upon his consent and not upon the law; and the validity of the gift, as against his creditors, will depend upon the same rules which govern other conveyances from him to her.   Nothing of the sort, however, is pretended to have been done in the present case, so as to take it out of the general rule, and the court, therefore, holds, as did His Honor below, that the debt created by the services rendered to the plaintiff's intestate

was due to the husband, individually, and that the same is barred by the statute of limitations, provided the defendant is in a condition to plead the same.

2. The right of the defendant to make this defence, conceding him to hold under a fraudulent conveyance from the plaintiff's intestate, does not seem to the court to admit of being questioned. It is true, that as against her creditors, his deed is declared void by the statute of frauds, and his possession is deemed by the law to be her possession, and, therefore, not adverse to them. Still, the first questions to be determined are, who are creditors? and what claims are valid? and in determining these, it surely cannot be contended that he occupies a worse position than his donor would do, or that he can be precluded from making any defence that would be open to her, were she now living and sued upon the claim. There is, in no sense, any privity between him and her administrator, by which the latter can claim to represent him, or to affect him by his admissions or acknowledgments.

In *Bevers* v. *Park, ante,* 456, we had occasion to consider the right of the heir under such circumstances to set up the statute of limitations as a defence, and governed by what seemed to be the great weight of authority, as well as by the justice and reasonableness of the proposition, we felt constrained to yield him that right. With infinitely greater force does the reasoning, which conducted as to that conclusion, apply to the case of a donee whose title, though void as to creditors, is still superior to that of the heir, or even of the ancestor himself, and certainly clothes him with every right that could possibly belong to either.

This court fully concurs in the rulings made in the court below, and the judgment thereof is affirmed.

No error. Affirmed.