**K.P. SEARCY, Plaintiff-Respondent,**

v.

**Ramona Jean SEARCY,
Defendant-Appellant.**

**No. WD 33784.**

Missouri Court of Appeals,
Western District.

Sept. 27, 1983.

Edward F. Ford III, Kansas City, for defendant-appellant.

Kenneth C. Hensley, Wilbur L. Pollard, Norton, Pollard & Norton, North Kansas City, for plaintiff-respondent.

Before SOMERVILLE, P.J., TURNAGE, C.J., and MANFORD, J.

SOMERVILLE, Presiding Judge.

In this appeal from a judgment entered in an action for dissolution of marriage, appellant (hereinafter wife), inter alia, asserts the trial court erred in declaring that a valid antenuptial agreement precluded the existence of any marital property subject to division.

There were no children born of the present marriage. The wife was gainfully employed before and during the marriage and makes no claim that the trial court erred in not awarding her any maintenance.

This was not the first marriage for either party. The wife had two children by a previous marriage. Although the husband had no children by his previous marriage, he felt a sense of obligation to provide for the needs of his mother and sister.

The antenuptial agreement in question was entered into on August 22, 1972, and the parties were married on August 25, 1972. The antenuptial agreement and the marriage both predated the effective date of the Dissolution Of Marriage Act. A full and complete disclosure of the items and values of property separately owned by the respective parties immediately prior to their forthcoming marriage was embodied in the antenuptial agreement. The wife's separate property, as disclosed therein, consisted of bank accounts totaling $8,450 and a 1971 Torino automobile and miscellaneous household furniture. The husband's separate property, as disclosed therein, consisted of a 50% interest in a real estate development business, various tracts of improved and unimproved real estate, notes secured by deeds of trust, checking and savings accounts, a car, boat and miscellaneous household goods, having a total net value of approximately $216,700.00.

Fairly paraphrased, the antenuptial agreement provided for retention, control and disposition by the respective parties of their separate property, and all increases or additions thereto, during and subsequent to the marriage, and for the release of all future claims and marital rights therein by each of the parties in the other's estate in the event of his or her death.

The antenuptial agreement neither made mention of nor reference to the disposition of property acquired during the course of the marriage in the event of divorce. Nevertheless, a careful perusal of the evidence in conjunction with the decree entered by the trial court finding no marital property leaves little doubt that both the trial court and the husband to some extent, as well as the wife perhaps, assumed sub silentio that any property acquired by either the husband or wife during the course of the marriage, irrespective of its source, was governed by the antenuptial agreement. The aforementioned, conjoined with an otherwise convoluted record, must be reckoned with in disposing of this appeal.

As a prelude to setting forth and disposing of the points relied on by the wife on appeal, the record, as perceived by this court after considerable difficulty, discloses certain additional facts which are pertinent at the threshold of appellate inquiry. During the course of the marriage the husband liquidated most of the property disclosed by him in the antenuptial agreement. The wife pursued essentially the same course with respect to her separately owned property. Although the record suggests that the husband exchanged funds received from liquidation of his separate property for other assets, it stops short of definitively showing that he did so, or, if he did so, the identity of such other assets. This evidentiary hiatus is attributable undoubtedly to the fact that he apparently assumed that proof of a valid antenuptial agreement, coupled with liquidation of the assets owned by him prior to the marriage, ipso facto supported a finding by the trial court that no marital property was generated by the marriage.

At this juncture, it is appropriate to focus attention on the points, four in number, relied on by the wife on appeal. The order of the points relied on are rearranged and restated, as doing so hopefully lends clarity and a better understanding of the issues tendered for disposition. Accordingly, the following points will be seriately addressed: (1) The trial court erred in holding that the antenuptial agreement was valid because it was contrary to public policy due to the advent of the Dissolution Of Marriage Act and was unfair due to the disparity in values between the property owned by the respective parties; (2) The trial court erred in finding that there was no marital property subject to division; (3) The trial court erred in failing to join the husband's sister as an "indispensable third party" because she claimed an interest in a certificate of deposit ($100,000.00) acquired with funds, in whole or in part, furnished by the husband; and (4) The trial court erred in assessing costs accrued below against the wife.

■ As a practical matter, the wife's attack on the validity of the antenuptial agreement on the grounds of public policy is contingent ___ that is, the antenuptial agreement is invalid if subject to being construed as governing the disposition of property in contemplation of divorce or dissolution. As previously noted, the antenuptial agreement does not purport to extend to or cover the disposition of marital property on dissolution of marriage. Even if it did, the wife's attack on the antenuptial agreement on grounds of public policy per se is thoroughly rejected by *Whitenton v. Whitenton,* —— S.W.2d —— (Mo.App.1983) No. 4583, handed down by the Missouri Court of Appeals, Eastern District, on August 30, 1983, and *Ferry v. Ferry,* 586 S.W.2d 782 (Mo.App.1979). The wife's sweeping attack on the antenuptial agreement on grounds of unfairness is rejected under authority of *Estate of Youngblood v. Youngblood,* 457 S.W.2d 750 (Mo. banc 1970).

■ From a pragmatic standpoint, the validity vel non of the antenuptial agreement is of no great moment in deciding the ultimate issue in the case, i.e. was there any marital property subject to division on dissolution of the marriage. In a very real sense the provisions of the antenuptial agreement identifying the separate property which the respective parties owned prior to consummation of the marriage, and the continuing right to sell, dispose, exchange, and control the separate property which each entered the marriage with essentially parallel § 452.330, RSMo.Supp.1982. More particularly, § 452.330.2 excludes property owned by spouses prior to marriage from the definition of marital property; § 452.-330.2(2) excepts "[p]roperty acquired in exchange for property acquired prior to the marriage" from the definition of marital property; and § 452.330.2(5) excepts "[t]he increase in value of property acquired prior to the marriage" from the definition of marital property. It is also noted that § 452.330.2 defines marital property as "all property acquired by either spouse subsequent to the marriage" with certain exceptions, two of which are heretofore noted. Section 452.330.3 provides, inter alia, that

all property acquired subsequent to the marriage "is presumed to be marital property" and "[t]he presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2." The burden of rebutting the presumption falls on the spouse claiming property acquired subsequent to the marriage to be separate property rather than marital property. *Hull v. Hull,* 591 S.W.2d 376, 379 (Mo.App.1979).

■ The real controversy on appeal swirls around a number of items of property acquired by the husband subsequent to the marriage which the decree, at least by implication, treated as the husband's separate property by reason of the decretal provision that there was no marital property. The items in question consist of a certificate of deposit, supra, which the husband's sister ostensibly had an interest in, a coffee table, a washer and dryer, a microwave oven, a divan, some TWA bonds, and some shares of stock in Kansas City Power & Light Company, all of which were in the husband's possession. Although the record, e.g. testimony of the husband that during the course of the marriage he liquidated the bulk of the separate property which he had acquired prior to the marriage, *suggests* that he used the funds obtained thereby to acquire the property in question, it stopped short of rebutting the presumption that the property in question, since it was acquired subsequent to the marriage, was marital property. Placed in sharper perspective, the husband stopped short of proving that the items of property in controversy constituted his separate property by virtue of one or more of the exceptions delineated in § 452.330.2.

■ Although this court has a duty (now incorporated in Rule 84.14) to dispose finally of a case before it on appeal, the ironclad tone of this duty is tempered by the fact that final disposition "presupposes a record and evidence upon which we can rule with some degree of confidence in the reasonableness, fairness and accuracy of our final conclusion." *In re I.M.J.,* 428 S.W.2d 18, 22 (Mo.App.1968). See also *Household Finance*

*Company, Inc. v. Watson,* 522 S.W.2d 111, 113 (Mo.App.1975). Concomitantly, even though the husband's evidence fell short of rebutting the presumption that the property in question was marital property, it is proper to remand the case to give him an opportunity to do so by reason of the fact that it patently appears that there may well be pertinent evidence touching the matter which was not presented during the trial. *Household Finance Company, Inc. v. Watson,* supra; and *Hood v. M.F.A. Mutual Insurance Company,* 379 S.W.2d 806, 812–13 (Mo.App.1964). Accordingly, that portion of the decree declaring that there was no marital property should be reversed and the cause remanded with directions that the husband be given an opportunity to submit further evidence, if there be any, that the property in question which he acquired subsequent to the marriage fell within one of the exceptions set forth in § 452.330.2. The wife, of course, must be given the opportunity to present any evidence she may have in response. After receipt of further evidence the trial court should determine anew whether or not there was any marital property, effect a division thereof if there be any, and enter judgment accordingly. Section 452.330. The trial court should in no way construe this opinion as being indicative, one way or the other, as to whether there was or was not any marital property.

In view of the disposition of this appeal as heretofore set forth, it is unnecessary to reach or decide the remaining two points relied on by the wife on appeal. The matter of whether or not the husband's sister should have been joined as "an indispensable third party" under authority of *Ravenscroft v. Ravenscroft,* 585 S.W.2d 270, 275 (Mo.App.1979), rests with the trial court on remand in accordance with Rule 52.04. The assessment of costs by the trial court against the wife has been rendered moot under authority of *Bush v. Norman,* 205 Mo.App. 674, 226 S.W. 1028, 1029 (1920).

Judgment affirmed in part; reversed in part, to-wit, that portion of the decree finding that there was no marital property; and cause remanded with directions to re-

open the case for receipt of further evidence and redetermination of whether or not there was any marital property subject to division, all in accordance with the opinion herein.

Affirmed in part, reversed in part, and remanded with directions.

All concur.