ROBERT LEE JOHNSON v. DORIS WILKIE JOHNSON

No. 471PA85

(Filed 12 August 1986)

1. **Divorce and Alimony § 30— personal injury settlement—marital or separate property—immateriality of N.C.G.S. § 52-4**

   The statute entitling each spouse to sue and recover damages for personal injuries in his or her name alone, N.C.G.S. § 52-4, is immaterial for purposes of the distribution of marital property statute, N.C.G.S. § 50-20. Therefore,

§ 52-4 does not govern the determination of whether a personal injury settlement constitutes marital or separate property, and §§ 52-4 and 50-20 are not repugnant to each other.

**2. Divorce and Alimony § 30— personal injury award—separate or marital property—analytic approach**

Courts which employ the analytic approach in determining whether an award for personal injury received during the marriage constitutes marital property consistently hold that the portion of the award representing compensation for non-economic loss, *i.e.*, personal suffering and disability, is the separate property of the injured spouse; the portion of an award representing compensation for economic loss, *i.e.*, lost wages, loss of earning capacity during the marriage, and medical and hospital expenses paid out of marital funds, is marital property.

**3. Divorce and Alimony § 30— personal injury settlement—separate or marital property—adoption of analytic approach**

The Supreme Court adopted the analytic rather than the mechanistic approach for determining whether proceeds representing a settlement recovered by a spouse upon a claim for his or her personal injuries sustained during the marriage of the parties constitutes marital property subject to distribution upon dissolution of the marriage or whether they are the separate property of the injured spouse.

**4. Divorce and Alimony § 30— personal injury settlement—separate or marital property—remand for evidence and findings**

An order of distribution of marital property which found that the proceeds of a $95,000 "net settlement" received by the husband after the separation of the parties upon his claim for personal injuries received during the marriage were the separate property of the injured husband must be reversed and remanded where the record contains no evidence as to what components or elements of recovery were represented by the "net settlement." On remand, the injured husband will have the burden of showing what amount or proportion of the whole represents compensation for loss of, or injury to, his separate property, to wit, compensation for his pain and suffering, disfigurement, loss of earning capacity subsequent to separation, lost wages subsequent to separation, and hospital and medical expenses incurred subsequent to separation. Should the wife claim that any portion of the "net settlement" represents compensation for loss of, or injury to, her separate property, she may attempt to so prove by a preponderance of the evidence if the pleadings are found to allege such a claim.

**5. Divorce and Alimony § 30— personal injury settlement—failure to prove compensation for separate injury**

Proceeds of the husband's $95,000 "net settlement" for personal injuries received during the marriage will be classified as marital property to the extent that the parties fail to prove that the $95,000 compensates for injury to separate property.

**6. Divorce and Alimony § 30— no presumption as to marital property**

There is no presumption in North Carolina that property acquired during the marriage is marital property.

Justice MARTIN concurring.

ON discretionary review of an opinion of the Court of Appeals, 75 N.C. App. 659, 331 S.E. 2d 211 (1985), affirming the 13 March 1984 equitable distribution order of *Sherrill, J.,* presiding at the 11 July 1983 Civil Non-jury Term, District Court, MECK-LENBURG County. Heard in the Supreme Court 15 May 1986.

*Wray, Layton, Cannon & Parker, P.A., by John J. Parker, III, and Patricia B. Edmundson, for plaintiff-appellee.*

*Hamel, Helms, Cannon, Hamel & Pearce, P.A., by Nicki Levine, Thomas R. Cannon, and A. Elizabeth Green, for defendant-appellant.*

MEYER, Justice.

By this case, we are confronted with an important question of first impression in this jurisdiction: whether proceeds representing a settlement recovered by a spouse upon a claim for his or her personal injuries sustained during the marriage of the parties constitute marital property subject to distribution upon dissolution of the marriage or whether they are the separate property of the injured spouse.

The panel below, affirming the order of the district court, held that such proceeds are the separate property of the spouse who sustained the personal injuries. The "majority" opinion below, authored by Phillips, J., is grounded on the premise that N.C.G.S. § 52-4 "established beyond dispute that the personal injury recoveries of all married women in this state are their 'sole and separate property'; as, of course, the personal injury recoveries of married men had been since time immemorial." *Johnson v. Johnson,* 75 N.C. App. 659, 660, 331 S.E. 2d 211, 212. Judge Arnold wrote a concurring opinion in which he was joined by Judge Cozort, stating a different basis for the result. The concurring judges found a conflict between N.C.G.S. §§ 52-4 and 50-20. Applying the canon of construction that, where two statutes necessarily are repugnant, the last one enacted shall prevail, the concurring

judges opined that N.C.G.S. § 50-20 governs the case and, since settlement of the personal injury claim was entered and the proceeds were received after the parties had separated, the recovery was not "marital property" within the meaning of N.C.G.S. § 50-20(b)(1).

We reverse and remand.

The plaintiff-husband and the defendant-wife were married in 1957. On 28 February 1981, the husband was involved in a serious motorcycle accident which resulted in a fifty percent permanent disability of his right foot. The parties separated on 5 August 1981. One year later, on 13 August 1982, the husband filed a complaint for divorce based on the one-year separation. At approximately the same time, he received a "net settlement" of his personal injury claim in the amount of $95,000. The wife filed a motion for equitable distribution on 8 September 1982. Each party filed affidavits in support of his or her contentions as to the marital property subject to division. The wife listed the assets resulting from her husband's personal injury settlement as marital property; the husband claimed these assets as his separate property.

The trial court specifically found in its 13 March 1984 order that the $95,000 settlement, its proceeds, and property purchased therewith are plaintiff-husband's separate property as defined by N.C.G.S. § 50-20(b)(1) and (2) and are therefore not subject to distribution. The trial court then found that because the plaintiff-husband had a larger amount of separate property than did the defendant-wife, she should be awarded a larger share of the marital assets. The only marital assets distributed to the husband were a 1971 Ford automobile and an eighteen-foot fishing boat.

Defendant-wife assigns as error the trial court's finding, conclusion, and order that "the personal injury settlement received by the Plaintiff as the result of a motorcycle accident in 1981, its proceeds and property purchased therewith are his separate property as the same is defined in NCGS 50-20(b)(2) free of all claims of the Defendant."

I.

[1] We must first eliminate any confusion engendered by the Court of Appeals' misinterpretation of N.C.G.S. § 52-4 vis-a-vis

§ 50-20 upon which each member of the panel below based his opinion. Section 52-4 neither is dispositive of the issue at bar nor is it inconsistent with or repugnant to § 50-20. The two provisions govern entirely different situations and were enacted for entirely different purposes.

Chapter 52 of our General Statutes is entitled "Powers and Liabilities of *Married* Persons." (Emphasis added.) The predecessor of N.C.G.S. § 52-4, C.S. 2513, was enacted in 1913. 1913 N.C. Sess. Laws ch. 13, § 1. It was amended in 1965 to apply equally to husbands and wives. 1965 N.C. Sess. Laws ch. 878, § 1. As originally enacted, the predecessor to § 52-4 provided:

> The earnings of a married woman by virtue of any contract for her personal service, and any damages for personal injuries, or other tort sustained by her, can be recovered by her suing alone, and such earnings or recovery shall be her sole and separate property as fully as if she had remained unmarried.

C.S. 2513 (1919).

As pointed out in *Patterson v. Franklin*, 168 N.C. 75, 79, 84 S.E. 18, 21 (1915) (Clark, C.J., concurring), this provision was apparently enacted in response to *Price v. Charlotte Electric Ry. Co.*, 160 N.C. 450, 76 S.E. 502 (1912). The majority opinion in *Price* intimated that the Martin Act of 1911 ("which practically constitutes married women free traders as to all their ordinary dealings," *id.* at 452, 76 S.E. at 503) did not abrogate the ancient rule that the right of action for a married woman's earnings and for damages resulting from her tortiously inflicted personal injuries belongs to her husband who is a necessary party in a suit to recover those damages or earnings. *See* N.C. Code of Civil Procedure, Title V, § 56 (1868) (when married woman is a party, her husband must be joined unless the action concerns her separate property); *Syme v. Riddle*, 88 N.C. 463 (1883) (husband entitled *jure mariti* to the proceeds of his wife's services (her wages); he alone could sue for and recover these proceeds. He is vested with this right in exchange for his obligation to support his wife and children.). *Cf. Baker v. Jordan*, 73 N.C. 145 (1875) (woman who sold her real property the day *before* her marriage to plaintiff without his knowledge or consent defrauded him). *See generally* Com-

ment, *Domestic Relations—Loss of Consortium from Injury to Spouse*, 29 N.C. L. Rev. 178 (1951).

These antiquated rules were grounded on the theory that a married woman's legal existence merged into that of her husband; she lost all of her property and her legal capacity.[1] By definition, these rules did not apply to single or divorced women. The eventual statutory abrogation of the common law rules finally resulted in *married* women having personal and individual rights, *during coverture*, to their own wages and claims for their personal injuries, and the right to sue for these individually.

In his foresighted opinion recognizing a wife's cause of action for loss of consortium, Chief Justice Clark, an early champion of women's rights, explained the need for, and the result of, the enactment of C.S. 2513, now N.C.G.S. § 52-4:

At common law the husband could maintain an action for the injuries sustained by his wife for the same reason that he could maintain an action for injuries to his horse . . . or any other property; that is to say by reason of the fact that the wife was his chattel. . . .

. . . .

By the married women's provision in the Constitution of 1868, Art. X, sec. 6, this conception of ownership by the husband whereby upon marriage all the personal property of the wife became the property of the husband and he became the owner of her realty during his lifetime, was abolished. The courts in this State continued for a long while, notwithstanding, to hold that the husband could recover his wife's earnings and the damages for injuries done her; but by the act of 1913, now C.S. 2513, it was provided that her earnings and damages for torts inflicted upon her were her sole and separate property for which she could sue alone.

*Hipp v. Dupont*, 182 N.C. 9, 12, 108 S.E. 318, 319 (1921). *See also Mims v. Mims*, 305 N.C. 41, 48-49, 286 S.E. 2d 779, 785 (1982);

---

1. "By marriage, the husband and wife are one person in law: that is, the very being or legal existence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of the husband: under whose wing, protection, and *cover*, she performs every thing . . . ." 1 W. Blackstone, Commentaries *442 (emphasis in original).

*Nicholson v. Chatham Memorial Hosp.*, 300 N.C. 295, 297-98, 266 S.E. 2d 818, 820 (1980).

Chapter 52 has no application to single or divorced men and women.

On the other hand, N.C.G.S. § 50-20, entitled "Distribution by court of marital property upon divorce" (enacted in 1981), which is part of Chapter 50, entitled "Divorce and Alimony," has no application to married people. Equitable distribution of marital property under Chapter 50 takes place between *divorced* spouses. N.C.G.S. § 50-21(a) (1984) ("an equitable distribution of property shall *follow* a decree of absolute divorce. . . . The equitable distribution *may not precede* a decree of absolute *divorce*." (Emphasis added.) ).

The North Carolina equitable distribution scheme has been characterized as falling "into what has aptly been characterized as a 'deferred community property law' system." Sharp, *Equitable Distribution in North Carolina: A Preliminary Analysis*, 61 N.C. L. Rev. 247, 249 (1983) (footnote omitted). Pursuant to the "deferred community property" equitable distribution scheme in North Carolina, community property principles do not apply *during* marriage. "If, however, the marriage ends in divorce, the property is distributed according to community property principles." Comment, *The Development of Sharing Principles in Common Law Marital Property States*, 28 U.C.L.A. L. Rev. 1269, 1282 (1981). *See also* Unif. Marital Prop. Act § 4, 9A U.L.A. 21, 30 comment (1983) ("Those family-law interests set forth in marital property definitions in equitable distribution statutes are delayed-action in nature and come to maturity only during the dissolution process."). *Cf. Mims v. Mims*, 305 N.C. 41, 54, 286 S.E. 2d 779, 788 ("The primary focus of our common law rules is to determine beneficial ownership of property acquired during marriage by giving effect to what was intended at the time the property was acquired. . . . The Equitable Distribution Act is designed, on the other hand, to divide property equitably, based upon the relative positions of the parties *at the time of divorce*, rather than on what they may have intended *when the property was acquired*." (Emphasis added.) ).

The most important difference in the community property system and the common law system upon which the North Car-

olina Equitable Distribution Act is superimposed is stated as follows:

> Under the community system, the nonacquiring spouse has a vested, present ownership interest in one-half of the community property. If the same property were similarly acquired in a common-law state, the nonacquiring spouse would have no vested, present interest in the property. At most, such a spouse would have a form of inchoate expectancy in a portion of the property in the event that the acquiring spouse predeceases or a potential right to a portion of the acquiring spouse's property on divorce.

Greene, *Comparison of the Property Aspects of the Community Property and Common-Law Marital Property Systems and Their Relative Compatibility With the Current View of the Marriage Relationship and the Rights of Women*, 13 Creighton L. Rev. 71, 87 (1979).

Under North Carolina's equitable distribution scheme, the fact that legal title to property acquired during the marriage is in one or the other spouse, or in both, is not controlling in the initial classification of property pursuant to N.C.G.S. § 50-20. *See, e.g., Loeb v. Loeb*, 72 N.C. App. 205, 211, 324 S.E. 2d 33, 39, *cert. denied*, 313 N.C. 508, 329 S.E. 2d 393 (1985); N.C.G.S. § 50-20(b)(2) (1984). Indeed, classification of property by the trial judge is the first step of the three-step equitable distribution procedure. *Cable v. Cable*, 76 N.C. App. 134, 137, 331 S.E. 2d 765, 767, *disc. rev. denied*, 315 N.C. 182, 337 S.E. 2d 856 (1985). If, as the majority opinion below suggests, § 52-4 were controlling on the issue at hand, there would be no need for the "classification" step as to earnings or tort recoveries, and as to that property, title would control its distribution just as it did prior to the enactment of our Equitable Distribution Act. Such a result is clearly not intended, nor is it possible, since § 52-4 governs legal interests in that property *during* an ongoing marriage, while § 50-20 governs its disposition *after* divorce.

Therefore, because § 52-4 serves a purpose entirely unrelated to § 50-20, and because the fact that § 52-4 entitles each spouse to sue for and recover damages for personal injuries in his or her name alone is immaterial for purposes of § 50-20, we disavow all suggestion in the majority and concurring opinions below

that § 52-4 governs disposition of this case or that § 50-20 and § 52-4 are repugnant to each other.

## II.

Resolution of the issue before us must be based on application of the facts to § 50-20 of our Equitable Distribution Act. In pertinent part, § 50-20 provides:

> § 50-20. Distribution by court of marital property upon divorce.
>
> . . . .
>
> (b) For purposes of this section:
>
> (1) "Marital property" means all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned, except property determined to be separate property in accordance with subdivision (2) of this section. . . .
>
> (2) "Separate property" means all real and personal property acquired by a spouse before marriage or acquired by a spouse by bequest, devise, descent, or gift during the course of the marriage. . . . Property acquired in exchange for separate property shall remain separate property regardless of whether the title is in the name of the husband or wife or both and shall not be considered to be marital property unless a contrary intention is expressly stated in the conveyance. The increase in value of separate property and the income derived from separate property shall be considered separate property.

N.C.G.S. § 50-20(b)(1), (2) (1984).

## A.

In her brief submitted to the Court of Appeals, defendant-wife contended that the proceeds of her former husband's personal injury settlement are "marital property" because the proceeds are not "separate property" since they were not "acquired by [plaintiff] before marriage or acquired by [plaintiff] by

bequest, devise, descent, or gift during the course of the marriage." N.C.G.S. § 50-20(b)(2). This contention is characteristic of the purely mechanical, or what has been termed the "mechanistic," approach to a resolution of the question whether personal injury awards constitute marital or separate property. 2 Valuation and Distribution of Marital Property § 23.07[1][a] (J. McCahey ed. 1985). The trend evidenced by the relatively few reported cases from equitable distribution jurisdictions is to follow this mechanistic approach to conclude that a personal injury award acquired during marriage is entirely marital property. *See, e.g., Liles v. Liles*, 289 Ark. 159, 711 S.W. 2d 447 (1986); *In re Marriage of Dettore*, 86 Ill. App. 3d 540, 42 Ill. Dec. 51, 408 N.E. 2d 429 (1980) (workers' compensation award); *In re Marriage of Gan*, 83 Ill. App. 3d 265, 38 Ill. Dec. 882, 404 N.E. 2d 306 (1980); *Gonzalez v. Gonzalez*, 689 S.W. 2d 383 (Mo. App. 1985) (F.E.L.A. settlement); *Landwehr v. Landwehr*, 200 N.J. Super. 56, 490 A. 2d 342 (1985); *Bero v. Bero*, 134 Vt. 533, 367 A. 2d 165 (1976). *But see Ettinger v. Ettinger*, 107 Misc. 2d 675, 435 N.Y.S. 2d 916 (N.Y. Sup. Ct. 1981); N.Y. Dom. Rel. Law § 236 (B)(1)(d)(2) (McKinney Supp. 1986) ("the term separate property shall mean . . . compensation for personal injuries").

The mechanistic approach is literal and looks to the general statutory definitions of marital and separate property and concludes that since the award was acquired during the marriage and does not fall into the definition of separate property or into any enumerated exception to the definition of marital property, it must be marital property. 2 Valuation and Distribution of Marital Property § 23.07[1][a] (J. McCahey ed. 1985). *E.g., In re Marriage of Fjeldheim*, 676 P. 2d 1234 (Colo. App. 1983); *In re Marriage of Gan*, 83 Ill. App. 3d 265, 38 Ill. Dec. 882, 404 N.E. 2d 306; *Nixon v. Nixon*, 525 S.W. 2d 835 (Mo. App. 1975); *Maricle v. Maricle*, 221 Neb. 552, 378 N.W. 2d 855 (1985); *In re Marriage of Mack*, 108 Wis. 2d 604, 323 N.W. 2d 153 (Wis. Ct. App. 1982) (result should now be different under Wisconsin's new Marital Property Act; *see infra* note 2).

In their arguments to this Court, however, both parties seem to urge us to adopt what has been characterized as an "analytic" approach to the resolution of the issue. The analytic approach asks what the award was intended to replace, 2 Valuation and Distribution of Marital Property § 23.07[1][a] (J. McCahey ed.

1985), and has been adopted by statute or case law in eight of the nine[2] community property states.[3] Generally, under the analytic approach the personal injury award may be seen as composed of three potential elements of damages: (1) those compensating the injured spouse for pain and suffering, disability, disfigurement, or lost limbs; (2) those compensating for lost wages, lost earning capacity, and medical and hospital expenses; and (3) those compensating the non-injured spouse for loss of services or loss of consortium. *See* Nev. Rev. Stat. § 123.121(a) (1985). *Cf. Amato v. Amato*, 180 N.J. Super. 210, 434 A. 2d 639 (1981) (discussing interest in tort claim).

[2] In this case, plaintiff-husband argues that the settlement proceeds are his separate property because they represent "[p]roperty acquired in exchange for separate property," N.C.G.S. § 50-20 (b)(2): his own personal security and right to be free from pain, suffering, fright, and disability. Peculiar to the injured spouse and not to his or her mate are the entirely subjective sensations of pain, suffering, mental anguish, injury to the body, disability, and embarrassment because of disfigurement or scarring attending bodily injury. Mental injury likewise has this characteristic of being peculiar to the sufferer. However, this is not true as to elements of damage such as lost wages and medical expenses. Those courts which employ the analytic approach consistently

2. Effective 1 January 1986, Wisconsin adopted a version of the Uniform Marital Property Act of 1983 pursuant to which spouses, *during* the marriage, acquire a present undivided fifty percent interest in "marital property." Wisc. Stat. Ann. § 766.31(3) (West Cum. Supp. 1986). Wisconsin has now been classified as a "community property" state by Freed & Walker, *Family Law in the Fifty States: An Overview*, 19 Fam. L.Q. 331, 354-55 (1986) (Table IV).

3. *Arizona: Jurek v. Jurek*, 124 Ariz. 596, 606 P. 2d 812 (1980); *Idaho: Cook v. Cook*, 102 Idaho 651, 653 & n. 3, 637 P. 2d 799, 801 & n. 3 (1981) (workers' compensation context); *Rogers v. Yellowstone Park Co.*, 97 Idaho 14, 539 P. 2d 566 (1974); *Louisiana:* La. Civ. Code Ann. art. 2344 (West 1985); *Nevada:* Nev. Rev. Stat. §§ 123.121(1), 123.130(1), (2) (1985); *New Mexico: Luxton v. Luxton*, 98 N.M. 276, 648 P. 2d 315 (1982); *Soto v. Vandeventer*, 56 N.M. 483, 245 P. 2d 826 (1952); *Texas:* Tex. Family Code Ann. § 5.01(a)(3) (Vernon 1975); *Washington: In re Marriage of Brown*, 100 Wash. 2d 729, 675 P. 2d 1207 (1984); *Wisconsin:* Wis. Stat. Ann. § 766.31(7)(f) (West Cum. Supp. 1986) (*see supra* note 2). *But see California:* Cal. Civil Code § 4800(c) (West 1983 & West Cum. Supp. 1986) ("community property personal injury damages shall be assigned to the party who suffered the injuries unless the court . . . determines that the interests of justice require another disposition").

hold that the portion of an award representing compensation for non-economic loss—i.e., personal suffering and disability—is the separate property of the injured spouse; the portion of an award representing compensation for economic loss—i.e., lost wages, loss of earning capacity during the marriage, and medical and hospital expenses paid out of marital funds—is marital property. This analysis, pioneered in *Fredrickson & Watson Constr. Co. v. Boyd*, 60 Nev. 117, 102 P. 2d 627 (1940), and *Soto v. Vandeventer*, 56 N.M. 483, 245 P. 2d 826, was recently employed by the Arizona Supreme Court, sitting *en banc*, and overturning fifty-four years of precedent:

> In the same fashion as pointed out in *Soto*, the body which [the husband] brought to the marriage is certainly his separate property. The compensation for injuries to his personal well-being should belong to him as his separate property. Any expenses incurred by the community for medical care and treatment and any loss of wages resulting from the personal injury should be considered community in nature, and the community is entitled to recover for such losses.

*Jurek v. Jurek*, 124 Ariz. 596, 598, 606 P. 2d 812, 814. *Accord In re Marriage of Brown*, 100 Wash. 2d 729, 675 P. 2d 1207 (1984) (*en banc*, overturning ninety-two-year-old Washington rule that personal injury recoveries are community property). *See also* W. S. McClanahan, Community Property in the United States § 6.27 (1982); 4A Powell on Real Property § 625.2[2] (1982).

Although the analytic approach is most often associated with community property states, it has been adopted in decisions from equitable distribution jurisdictions. *E.g., Gloria B.S. v. Richard G.S.*, 458 A. 2d 707 (Del. Fam. Ct. 1982); *Campbell v. Campbell*, 255 Ga. 461, 339 S.E. 2d 591 (1986); *In re Marriage of Gerlich*, 379 N.W. 2d 689 (Minn. App. 1986); *Van De Loo v. Van De Loo*, 346 N.W. 2d 173 (Minn. App. 1984); *In re Marriage of Blankenship*, --- Mont. ---, 682 P. 2d 1354 (1984) (by implication; Supreme Court remanded for findings as to purpose and terms of workers' compensation award).

In the very recent case of *Campbell v. Campbell*, 255 Ga. 461, 339 S.E. 2d 591 (1986), the Georgia Supreme Court said this:

> The property which we have found to be outside the marital estate is property which is very personal to the party to whom it belongs and property which was in no sense generated by the marriage. A personal injury claim settlement, to the extent that it represents compensation for pain and suffering and loss of capacity is peculiarly personal to the party who receives it. For the other party to benefit from the misfortune of the injured party would be unfair. However, to the extent that the settlement amount represents compensation for medical expenses or lost wages during the marriage, the settlement may be considered an asset of the marriage.

*Id.* at 462, 339 S.E. 2d at 593.

On the other hand, at least one equitable distribution state court has expressly rejected the analytic approach rationale in interpreting its statute. *Platek v. Platek*, 309 Pa. Super. 16, 454 A. 2d 1059 (1982) (legislative history compels result).

Our own Court of Appeals was recently presented with the question of whether insurance proceeds, paid to a husband when he was permanently injured in a motorcycle accident during the marriage, were properly classified as marital property. *Little v. Little*, 74 N.C. App. 12, 327 S.E. 2d 283 (1985). In *Little*, the husband had been issued a life insurance policy with accident benefits. After his injury — which left him partially paralyzed from the waist down — and before the parties separated, the insurance company paid proceeds in a lump sum of $100,000 as "Family Accident Benefits" and also paid the husband's medical and hospital expenses. The wife's insurer also paid the medical and hospital expenses.

A unanimous panel of the Court of Appeals seemed to use the mechanistic approach in holding that "[a]s the insurance proceeds were not acquired by bequest, devise, descent, or gift, [N.C.G.S. § 50-20(b)(2)], the legislature did not exempt them from incorporation in the pool of assets denominated 'marital property.'" *Id.* at 16, 327 S.E. 2d at 287. Correctly stating that the "majority rule from other jurisdictions appears to be that absent a statute to the contrary, 'claims and awards for personal injuries resulting from occurrences during the marriage are generally treated as marital property,'" *id.* at 16, 327 S.E. 2d at 287-88, the Court of Appeals in *Little* recognized that "some courts

distinguish between money realized as compensation for pain and suffering as the personal property of the injured spouse, and that portion of an award representing lost wages and medical expenses as marital property." *Id.* at 17, 327 S.E. 2d at 288 (citations omitted). Without rejecting this statement of the analytic approach, the Court of Appeals noted in *Little* that the trial court had made the unexcepted-to finding that: " 'The $100,000 paid to husband for the disability was a sum provided to compensate him for his *lost ability to work* at gainful employment.' " *Id.* (emphasis added). Therefore, the classification of the insurance proceeds as marital property was correct in *Little* under either the mechanistic or the analytic approach, at least to the extent that the recovery compensated for lost earning capacity during the marriage.

We note that the majority opinion of the panel below states a basic premise of the analytic approach in support of its holding:

> The obvious purpose of the Equitable Distribution Act is to require married persons to share their maritally acquired property with each other—it is not to require either party to contribute his or her bodily health and powers to the assets for distribution—and the funds that the appellant [wife] claims to have a right to share in were paid to the appellee [husband] for injuries suffered by his body, which, of course, he had before the marriage.

*Johnson v. Johnson*, 75 N.C. App. 659, 661, 331 S.E. 2d 211, 212. Indeed, as early as 1921, this Court recognized the uniquely personal aspect of an injured party's action and recovery for pain and suffering incident to negligently inflicted personal injury. Then Chief Justice Clark wrote, "We do not think that the husband could now recover compensatory damages for [his wife's] physical and mental anguish . . . which are matters purely personal to her, and for which she alone can recover." *Hipp v. Dupont*, 182 N.C. 9, 14, 108 S.E. 2d 318, 320.

### B.

[3] We have carefully reviewed the reported opinions of the several states which have addressed the issue before this Court, and we have studied the views of the various commentators on the subject. After weighing the relative strengths and weak-

nesses of both the mechanistic and the analytic approaches, we are of the opinion that the latter is the better reasoned.

We recognize that by this decision we assume a minority position among the equitable distribution states which have addressed the issue. However, we are convinced that the analytic approach is consistent with the spirit and letter of our Equitable Distribution Act. Because we agree with the reasoning of those equitable distribution states which have adopted the analytic approach to resolving the issue before us, we also adopt that approach.

As the New Jersey Superior Court stated in *Amato v. Amato*, 180 N.J. Super. 210, 434 A. 2d 639 (App.Div.1981):

> The literal language of the statute ought not limit our inquiry to the time when the compensation is received. The purpose for which the property is received should control. Insurance funds, for example, paid to replace property destroyed by fire would remain the separate property of a spouse if the destroyed property had been owned by the spouse before marriage. So, too, we must look at the purpose for which the compensation was received during the marriage to determine if it is subject to distribution. If we view the recovery here simply as the replacement or restoration, so to speak, of the physical and mental health a spouse brought to the marriage, it is like an exchange for property possessed before the marriage. Under both the common law and community property systems an injured spouse should keep funds which replace assets brought to the marriage.

*Id.* at 219, 434 A. 2d at 643 (quoting *Harmon v. Harmon*, 161 N.J.Super. 206, 214-218, 391 A.2d 552, 556-57 (App.Div.1978) (Botter, J.A.D., concurring) ); *see also Jurek v. Jurek*, 124 Ariz. 596, 598, 606 P. 2d 812, 814 (1980); *Cook v. Cook*, 102 Idaho 651, 653, 637 P.2d 799, 801 (1981).

> Characterizing a personal injury recovery based on the purpose for which it was received permits separate treatment of the various components of the recovery.

*Van De Loo v. Van De Loo*, 346 N.W. 2d 173, 176 (Minn. App. 1984).

Johnson v. Johnson

## C.

[4]  The record on appeal in the instant case contains no clue whatsoever as to what "various components" or elements of recovery are represented by the $95,000 "net settlement." The defendant-wife, in her affidavit listing items she claimed to be "marital property," listed a "personal injury settlement" valued by her at $100,000. She did not claim that plaintiff-husband's cause of action for personal injuries was marital property — probably because plaintiff's claim on his cause of action had already been liquidated as the result of his receipt, after the separation of the parties, of a "net settlement" in the amount of $95,000.

To summarily classify the $95,000 as separate property of the plaintiff-husband merely because a check in that amount was received by him after separation of the parties would ignore the classification scheme of our Equitable Distribution Act. In order to classify the $95,000 for equitable distribution purposes, the trial court was required to determine the nature of the asset. Was it a gift? An inheritance? Earnings of a spouse? Proceeds from the sale of marital property? Compensation for injuries to the body of one spouse, as well as for medical expenses and/or lost wages during the marriage? Only after determining the nature of the asset received by one spouse *after separation*, yet claimed by the other to be "marital property," may a classification be made of that asset as between "marital" or "separate" property.

The record is devoid of any evidence or findings of fact as to the actual nature of the $95,000 except for the following stipulation of the parties, apparently entered for purposes of appeal:

> [T]he plaintiff was injured in an automobile accident on February 28, 1981, and as a result, the plaintiff had a cause of action for personal injuries. The plaintiff recieved [sic] a net settlement of $95,000.00, which was paid to him in 1982, after the separation of the parties but before the judgment of divorce was entered.

We have already discussed the well-known fact that awards or settlements arising from a "personal injury" claim frequently are composed of many elements of recovery, some of which represent compensation for injury to, or loss of, marital property and some for injury to separate property of the injured spouse. Many

personal injury recoveries may also include compensation for injury to the separate property of the non-injured spouse, such as the right of consortium, where such injuries have been properly alleged and proved.

In the instant case, the trial court's identically worded conclusion of law and judgment in its equitable distribution order of 13 March 1984 relating to the disputed property states:

> 1. The personal injury settlement received by the Plaintiff as the result of a motorcycle accident in 1981, its proceeds and property purchased therewith are his separate property as the same is defined in N.C. G.S. 50-20(b)(2) free of all claims of the Defendant.

In support of this conclusion and judgment, the trial court entered its "finding of fact" that:

> 5. In 1982, the Plaintiff received the sum of $95,000.00 as a settlement for personal injuries sustained by him as the result of a motorcycle accident in 1981; the said personal injury settlement, its proceeds and all property purchased therewith are not marital property as claimed by the Defendant, but rather, is separate property as those terms are defined by N.C. G.S. Section 50-20(b)(1) and (2) and belongs to the Plaintiff free and clear of any claims of the Defendant.

This record contains no factual basis upon which the trial judge could conclude (as he apparently did) that the $95,000 "net settlement" represented compensation *solely* for loss to the separate property of the plaintiff-husband. There is no indication of what, if any, evidence was produced as to the composition of the "net settlement"; indeed, the defendant-wife admits in her brief that "[w]e do not know how much of the plaintiff's award was for lost wages, medical care or lost services." Therefore, the record "evidence" does not support the trial court's conclusory finding of fact, conclusion of law, and order to the effect that the entire $95,000 is the sole and separate property of the plaintiff-husband. We must therefore remand the matter for proceedings at which evidence will be received and findings of fact and conclusions of law entered as to what elements of recovery are represented by the $95,000 "net settlement" and in what amounts or proportion to the whole.

On remand, the injured spouse, plaintiff-husband, will have the burden of showing what amount or proportion of the whole represents compensation for loss of, or injury to, his "separate property," to wit, compensation for his pain and suffering, disfigurement, loss of earning capacity subsequent to separation, lost wages subsequent to separation, hospital and medical expenses incurred subsequent to separation. He may satisfy that burden by a preponderance of the evidence. Should the defendant-wife claim that any portion of the "net settlement" represents compensation for loss of, or injury to, *her* separate property, she may attempt to so prove by a preponderance of the evidence, if the pleadings are found to allege such a claim.

[5] Because each element of recovery comprising the $95,000 "net settlement" must necessarily compensate for loss of, or injury to, the injured spouse's separate property, *or* the non-injured spouse's separate property, *or* the marital property of the spouses, any portion of the "net settlement" not proved by a preponderance of the evidence to compensate for loss to a spouse's separate property must, necessarily, fall into the category of "marital property." Therefore, *to the extent* that the parties fail to prove that the $95,000 compensates for injury to separate property and is therefore properly classified as separate property in the amounts proved, the proceeds of the plaintiff-husband's personal injury "net settlement" shall be classified as marital property[4] and subject to distribution according to N.C.G.S. § 50-20.[5]

---

[6]   4. The Court of Appeals has held that the language of our Equitable Distribution Act "creates a *presumption* that all property acquired by the parties during the course of the marriage is 'marital property.'" *Loeb v. Loeb*, 72 N.C. App. 205, 209, 324 S.E. 2d 33, 38, *cert. denied*, 313 N.C. 508, 329 S.E. 2d 393 (1985) (emphasis added); *accord McLeod v. McLeod*, 74 N.C. App. 144, 157, 327 S.E. 2d 910, 918, *cert. denied*, 314 N.C. 331, 333 S.E. 2d 488 (1985). *Contra Wade v. Wade*, 72 N.C. App. 372, 381, 325 S.E. 2d 260, 269, *disc. rev. denied*, 313 N.C. 612, 330 S.E. 2d 616 (1985). Several equitable distribution states have provided by statute a presumption that property acquired during the marriage is marital property. Colo. Rev. Stat. § 14-10-113(3) (1973); Del. Code Ann. tit. 13, § 1513(c) (1974); Ill. Ann. Stat. ch. 40, § 503(b) (Smith-Hurd Cum. Supp. 1986); Ky. Rev. Stat. Ann. § 403.190(3) (1983); Me. Rev. Stat. Ann. tit. 19, § 722-A(3) (1981); Minn. Stat. Ann. § 518.54(5) (West Cum. Supp. 1986); Mo. Ann. Stat. § 452.330(3) (Vernon 1986); Pa. Stat. Ann. tit. 23, § 401(f) (Purdon Supp. 1986); Va. Code § 20-107.3(A)(2) (Cum. Supp. 1986). The North Carolina General Assembly, unlike legislatures in those states, did not choose to provide such a presumption by statute, and this Court will not infer one by judicial decision. We believe that the legislature's decision not to provide by

Johnson v. Johnson

The decision of the Court of Appeals is reversed, and the order of equitable distribution entered 13 March 1984 is vacated. The case is remanded to the Court of Appeals for further remand to the District Court, Mecklenburg County, for proceedings not inconsistent with this opinion.

Reversed and remanded.

Justice MARTIN concurring.

I write to state that although the majority does not expressly hold to the contrary, I conclude that the mandate of the statute creates a presumption that a settlement award representing the value of a cause of action which arose during the marriage of the parties and before separation is marital property. N.C.G.S. § 50-20(b)(1)(2) (1985). Additionally, I would like to clarify a premise which the majority relies on but does not discuss. Plaintiff's accident occurred during the course of the marriage and before the parties separated. Because the cause of action was "acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties," it is presumed marital property, N.C.G.S. § 50-20(b)(1), until, as the majority explains, the injured spouse proves by a preponderance of the evidence that all or part of it is separate property. *See* Sharp, *Equitable Distribution of Property in North Carolina: A Preliminary Analysis*, 61 N.C.L. Rev. 247 (1983). This is in accord with judicial interpretations of similar statutes in other states. *See, e.g., Searcy v. Searcy*, 658 S.W. 2d 931 (Mo. App. 1983); *Hemily v.*

statute for a marital property presumption was deliberate. Moreover, we perceive no need for such a presumption, express or implied, in our equitable distribution scheme. Under our statutory scheme, without the aid of any presumption, assets, the classification of which is disputed, must simply be labeled for equitable distribution purposes *either* as "marital" *or* "separate," depending upon the proof presented to the trial court of the nature of those assets.

5. We hasten to note that even if the entire "net settlement" should be classified as marital property, such a result does not necessarily require the *distribution* of any portion thereof to the non-injured spouse. According to N.C.G.S. § 50-20 and cases interpreting that statute, should any portion of the "net settlement" be classified as marital property, the trial court, in its broad discretion, *may* determine that an equal division thereof would be inequitable if such a determination is supported in the order by specific findings of fact. *See generally White v. White*, 312 N.C. 770, 324 S.E. 2d 829 (1985).

*Hemily,* 403 A. 2d 1139 (D.C. 1979); *Painter v. Painter,* 65 N.J. 196, 320 A. 2d 484 (1974). *See* Sharp, *The Partnership Ideal: The Development of Equitable Distribution in North Carolina* (publication forthcoming in N.C.L. Rev.). *Cf.* N.C.G.S. § 50-20(b)(2) (1985). It is important to note analytically that it is the cause of action, and not its proceeds, which is the property at issue here. The parties stipulated: "[T]he plaintiff was injured in an automobile accident on February 28, 1981, and as a result, the plaintiff had a cause of action for personal injuries." If the cash proceeds were the property sought to be divided, there would be no issue for this Court to decide: the *proceeds* in the present case were received by plaintiff after the date of separation of the parties and, considered alone, would therefore automatically be considered separate property under N.C.G.S. § 50-20(b)(1). Instead, as the majority tacitly acknowledges, the proceeds merely represent the value of the cause of action, which cause was acquired during marriage and before separation.

In addition to the foregoing, I disagree with a minor aspect of the majority's opinion. The majority states that:

> On remand, the injured spouse, plaintiff-husband, will have the burden of showing what amount or proportion of the whole represents compensation for loss of, or injury to, his "separate property," to wit, compensation for his pain and suffering, disfigurement, loss of earning capacity subsequent to separation, lost wages subsequent to separation, hospital and medical expenses incurred subsequent to separation. He may satisfy that burden by a preponderance of the evidence.

While I agree that compensation for pain and suffering, loss of earning capacity subsequent to separation, lost wages subsequent to separation, and hospital and medical expenses incurred by the injured party subsequent to separation may be separate property, I do not agree that compensation for "disfigurement" occurring during marriage and *prior to* separation should always be considered separate property. Disfigurement distinctly may affect the earning capacity of a marital partner, as is recognized in our workers' compensation statutes. *See* N.C.G.S. § 97-31(22) (1985) (bodily disfigurement). The earning capacity of married persons who are not separated is presumably marital property. Because disfigurement often is accompanied by pain and suffering acutely

personal to the injured party, one could argue that the value of an award compensating a person for disfigurement itself could be divided into components of marital property (the earning capacity aspect) and separate property (the pain and suffering purely personal to the injured party). However, I conclude that any elements of a settlement or award attributable to disfigurement (resulting from a cause of action arising during the marriage but before separation of the parties) should be considered solely representative of the value of loss of earning capacity of the injured spouse. The pain and suffering accompanying disfigurement is properly includable in that part of a settlement or award compensating one for "pain or suffering," which, I agree, may be the separate property of an injured spouse.

Otherwise, I concur with the majority opinion.