In re Franklin James
**GARNER, Debtor.**

**Bankruptcy No. 85–03755–2.**

United States Bankruptcy Court,
W.D. Missouri.

Dec. 29, 1987.

Robert A. Pummill, Barker, Rubin & Sonnich, Kansas City, Mo., for claimants Barker & Rubin.

Bruce E. Strauss, Kansas City, Mo., trustee.

Michael H. Berman, Prairie Village, Kan., for Margie Garner.

Joseph Owens, Des Moines, Iowa.

### MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

Debtor filed a voluntary petition for Chapter 11 reorganization on October 21, 1985. On May 28, 1987, the proceedings were converted to a Chapter 7 proceeding and Bruce Strauss, Esquire, was appointed Trustee. Debtor was and is represented throughout the proceedings by Robert Pummill, Esquire, of the law firm of Barker, Rubin & Sonnich, P.C. In the original schedules filed December 27, 1987, debtor made two pertinent disclosures (or nondisclosure)—

1. That he held $1,178,865.00 in promissory notes from North American Car Corp.

2. That he had made no assignments to any creditors within two years of filing the bankruptcy proceeding.

On April 4, 1986, debtor filed amended B2 schedules and now disclosed that he owned an 80% interest in 13 railroad cars of a value of $24,000.00. On September 22, 1986, debtor filed amended B2 schedules and disclosed, inter alia, that he owned 80% of 13 railroad cars of a value of $24,000.00. On March 9, 1987, debtor filed amended B1 schedules but nothing in regard to personal property under B2. On July 7, 1987, debtor filed amended schedules for the converted and now Chapter 7 proceedings. In his amended B2 schedules debtor listed a 53% interest in 11 rail cars with a value of $10,785.00. The Trustee moved to sell the rail cars free and clear of all interests with the interests of any party to attach to the proceeds. On August 25, 1987, this Court ordered the sale of said 11 railroad cars for $20,350.00 and further ordered that any party with an interest in said property file notice of their interest within 20 days.

That produced a very mixed bag of pleadings. First, one Joseph E. Owens, at

one time an attorney in Des Moines, Iowa, claimed that he and Frank P. Barker, III, a director of Barker, Rubin & Sonnich, P.C. had a 33⅓% interest in the railroad cars. Second, Robert A. Pummill, on September 21, 1987, signing for Barker, Rubin & Sonnich, P.C. on behalf of Frank P. Barker III and Charles E. Rubin claimed that Frank P. Barker, III and Charles E. Rubin had a 33⅓% interest in said railroad cars. Third, Margie Garner, wife of debtor, filed a two part claim as to the proceeds of the railroad cars claiming a 13⅓% interest as successor to Tom Garner and an ingenuous claim for her "marital right" in said rail cars as a result of her marriage to the debtor who is the owner thereof. The percentage or quantum of said "marital right" suggested by Margie Garner in her motion and her post trial brief is set at 50%. Two hearings resulted as to said claims, certain post trial pleadings have been filed and this opinion follows:

## BACKGROUND

Debtor and his cousin, Thomas J. Garner, owned all of or the substantial majority of the common capital stock of a company known as Surface Transportation International, Inc. In December of 1978, North American Car Corporation acquired all of the stock of Surface Transportation, Inc. The consideration was cash, promissory notes and employment contracts for debtor and Tom Garner. In 1980 North American Car Company terminated the employment contracts and ceased making payments on the notes. North American Car Company also filed suit against debtor and Tom Garner alleging, inter alia, fraud and misrepresentations in the procurement of the sale of the stock. That lawsuit and the Garners' counterclaims drug on until the matter was finally settled in 1982. Debtor and Tom Garner were represented by Joseph Owens and Frank P. Barker, III under a very detailed contract of employment that provided for a retainer, certain hourly charges, payment of expenses and a ⅓ contingent fee of any recovery by the Garners on the counterclaims.

The settlement of all the litigation called for North American Car Company to pay the Garners substantial sums of cash, issue new promissory notes and turn over certain equipment to the Garners. The eleven rail cars were part of that equipment. The allocation or distribution of the consideration of the settlement from North American Car Company was 80% to debtor and 20% to Tom Garner. North American Car Company executed a Bill of Sale for the equipment to debtor and to Tom Garner. Debtor has always remained in possession of and control of the railroad cars.

## CLAIMS OF MARGIE GARNER

As to the 13⅓% ownership interest claimed by Margie Garner as the successor to Thomas J. Garner, the genesis of that claim is not seriously disputed. The Bill of Sale from North American Car Company, dated in January of 1983, transferred the railcars to Franklin J. Garner, Jr., debtor herein, and Thomas J. Garner, his cousin. Although said bill of sale is silent as to the nature or extent of the two respective interests of the cotenant, it seems clear that they were tenants in common and that the interest of the debtor was 80% and that of his cousin was 20%. Certainly there was no evidence to the contrary. Neither does there seem to be any dispute that on August 29, 1985, Thomas J. Garner and his then wife Jeannie Garner transferred their interest in the rail cars to Margie Garner by a duly notarized Bill of Sale.

The Court does not fault the Trustee for casting a jaundiced and skeptical eye upon that transaction. Good trustees should, and properly do, look on any transaction involving relatives of a debtor that occur within a short time of bankruptcy proceedings being commenced, not only with interest but with a healthy degree of skepticism and cynicism. Furthermore, not only the timing of this transfer of the undivided interest of Thomas J. Garner, but the alleged consideration therefor, would cause any redblooded Trustee to merge his eyebrows with his hairline. Margie Garner testified that the consideration for this transfer was her allowing Thomas and Jeannie Garner to live on *her* yacht when they were broke. In other proceedings in

this case, the Trustee is alleging that the yacht was initially in debtor's name and subsequently and improperly transferred into the name of Margie Garner. Albeit, even if there were no consideration or at least no adequate consideration for the transfer, it makes no difference as far as any claim of the Trustee is concerned. The subject matter was the property of Thomas J. Garner; it was never shown to have become property of the debtor and therefore, never property of the estate. If the Trustee had been able to produce any evidence that Thomas J. Garner's interest had ever been transferred, at one time or another, to Franklin J. Garner, Jr., the debtor herein, a whole different situation would evolve. Even if this transfer was a gift inter vivos there is nothing in the bankruptcy code that prohibits it.

Careful readers will note that Thomas J. Garner's interest was 20% but that Margie Garner claims only 13⅓% interest. It is asserted by her counsel that the difference represents the 6⅔% interest of Joseph E. Owens, Frank P. Barker, Jr. and Charles E. Rubin in Thomas J. Garner's share of the rail cars. This Court finds no reason for it to interfere or intervene into the interests involved therein.

This aspect of Margie Garner's claim to the proceeds will be ruled in her favor and against the Trustee. Margie Garner shall receive 20% of the monies received from the sale of the railroad cars.

■ The second aspect of Margie Garner's claim is more ephemeral. She claims that she is entitled to a "marital right" in the interest of debtor in the 11 rail cars. However, her counsel has not cited any figure, number or percent to delineate this "marital right", other than saying she has a marital interest of 50% of any remaining share belonging to debtor.

The burden of proof to sustain such a claim is clearly that of the claiming spouse. See *Rasmussen v. Rasmussen*, 627 S.W.2d 117 (Mo.App.1982) and *Searcy v. Searcy*, 658 S.W.2d 931 (Mo.App.1983) and cases cited therein. Margie Garner seeks to sustain same on two bases. First, she cites

*Cartwright v. Cartwright*, 707 S.W.2d 469 (Mo.App.1986) to the effect that:

"All property acquired by either spouse subsequent to the marriage and prior to the decree of dissolution is ... presumed to be marital property ..."

That is merely the restatement of a portion of the statute, R.S.Mo. 452.330(3) and fails to recite that same *vests* not later than the commencement of an action by one spouse against another that leads to a final decree of dissolution. In this case there is no evidence that any dissolution action has been commenced, and thus no reason to conclude that such interest had vested in her. While every transfer of real estate made during coveture without the consent of a spouse is mandatory by statute as being in fraud of said spouse's "marital right", (R.S.Mo. 474.150.2.) no such mandate exists as to personal property transferred by the acquiring or owning spouse except as set out in R.S.Mo. 452.330(3).

The second string to Margie Garner's bow is the so called "the source of the funds rule" as enunciated in *Hoffman v. Hoffman*, 676 S.W.2d 817 (Mo.1984). It is Margie Garner's contention that she had $60,000.00 when she and debtor got married; she did not have $60,000.00 when the settlement was reached in 1982; and that q.e.d. she financed the litigation. However, she introduced no evidence (such as checks, money orders, or receipts) that showed she remitted any of her funds to any attorneys handling this case. Any funds expended by her could have been expended for living expenses or other items during the period that debtor's income was cut off prior to the settlement.

There is a further reason that Margie Garner's claim to 50% of debtor's interest in the rail cars should not be allowed. Section 452.330(2) R.S.Mo. 1978 provides that "... property acquired in exchange for property acquired prior to marriage ..." is not marital property. The settlement agreement clearly indicates that debtor and Thomas Garner were relinquishing their rights to payment under the promissory notes and employment contracts executed by North American Car Company in 1978.

This was prior to the date of the marriage of debtor and Margie which took place in 1979. See *Bizzell v. Bizzell*, 697 S.W.2d 559 (Mo.App.1985) and cases cited therein.

For all of the foregoing reasons, the claim of Margie Garner to a "marital interest" in the debtor's interest in the rail cars is DENIED.

### CLAIM OF JOSEPH E. OWENS

Joseph E. Owens claims that he, as the successful attorney for debtor and Thomas J. Garner, is entitled to ⅙ of the sale price of the rail cars. This is based on the employment contract between the two Garners, as clients, and Mr. Owens and Frank P. Barker III, as attorneys, wherein the attorneys were receive ⅓ of any sums recovered by way of counterclaim against North American Car Company and reinforced by the letter of instructions entered into between all the parties whereby the settlement sums to be paid through Centerre Bank by North American were to be divided in a certain way and credited to certain specified accounts.

Unfortunately for Mr. Owens, those documents speak only to money and are totally silent as to rail cars or cranes or any other items of property. Furthermore, the evidence indicated that after the initial distribution, Mr. Owens and debtor had a disagreement and none of the subsequent payments received from any source (either the North American payments or the rental realized from the rail cars) was ever paid to Mr. Owens in conformity with his contentions. In point of fact, Mr. Owens filed suit against the two Mr. Garners for monies he alleged were due him before this bankruptcy was ever filed.

Finally the Court notes that in the settlement agreement Mr. Owens released his attorney's lien. It would appear to the Court that Mr. Owens may or may not have a cause of action against the two Mr. Garners, but for the purposes of this proceeding, he is no better off than any other unsecured creditor. The rail cars are personal property. The documents evidencing title show debtor and Margie Garner to be owners of 80% and 20% thereof respectively and there the trail stops.

For all of the foregoing reasons, the claim of Joseph E. Owens to the proceeds of the sale of the rail cars is DENIED.

### CLAIM OF FRANK P. BARKER, III AND CHARLES E. RUBIN

Prior to issuance of this Opinion Frank P. Barker III and Charles E. Rubin withdrew their claim to any of the proceeds from the sale of the rail cars, thereby blessedly shortening this Opinion to the relief of the author and any potential readers.

Therefore, the Court rules that Margie Garner shall receive 20% of the proceeds of the sale of the rail cars, the Trustee shall receive 80% of the aforesaid proceeds. The Court leaves Margie Garner and the attorneys to determine any division of said 20% interest between themselves since this is not property of the estate and therefore not subject to this Court's jurisdiction.

The foregoing shall constitute Findings of Fact and Conclusions of Law in accordance with Rule 7052, Rules of Bankruptcy.